Filed 7/26/17 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| In re JORDAN E. TAITANO on Habeas Corpus. | A147412<br><br>(Contra Costa County<br>Super. Ct. No. 5-132337-7)<br>**ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING**<br>**[CHANGE IN JUDGMENT]** |

BY THE COURT:

It is ordered that the opinion filed herein on July 5, 2017, be modified as follows:

On page 1, the second paragraph is replaced with the following: "In light of the plain language of the statute, the statutory scheme, the statutory purpose, and existing precedent, we conclude that section 1368 does not authorize a new competency hearing in Taitano's circumstances."

On page 21, the first full paragraph is replaced with the following: "In sum, appellant has not demonstrated that the trial court had express or implied authority to hold a new competency hearing under the particular circumstances of this case."

On page 22, the following footnote is added at the end of the last paragraph:

"[10] After we issued our decision on July 5, 2017, we were advised that Taitano died in April 2017. Although defendant's death will abate this appeal and would ordinarily render the matter moot, we have addressed the issues due to their importance and their likely recurring nature."

On page 23, the paragraph under the heading "III. DISPOSITION" is replaced with the following:

"The court having received a certified copy of the death certificate of defendant Taitano during the pendency of this appeal, all proceedings in this case must be permanently abated. The cause is remanded to the trial court, with directions to enter an order permanently abating all proceedings with respect to Taitano."

The modification effects a change to the judgment.

The petition for rehearing is denied.

The motion to file the death certificate under seal is granted.


Date: _____          _____

                                                    JONES, P.J.

Filed 7/5/17 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re JORDAN E. TAITANO on Habeas Corpus. | A147412<br><br>(Contra Costa County<br>Super. Ct. No. 5-132337-7) |

Jordan E. Taitano was determined by the trial court to be incompetent to stand trial. His commitment facility subsequently found there was no substantial likelihood he would be restored to mental competence in the foreseeable future, he completed the three-year maximum commitment period, and he was determined not to be subject to a conservatorship as gravely disabled. The trial court granted Taitano a writ of habeas corpus and released him, concluding that Penal Code section 1368 did not authorize a new competency hearing.[1] The People appeal, urging that such a hearing is authorized under section 1368.

In light of the plain language of the statute, the statutory scheme, the statutory purpose, and existing precedent, we conclude that section 1368 does not authorize a new competency hearing in Taitano's circumstances. We therefore affirm the order.

I. <u>FACTS AND PROCEDURAL HISTORY</u>

In November 2009, an information charged Taitano with murder, robbery, carjacking, attempted kidnapping, first degree burglary, and two counts of reckless evasion of a police officer resulting in great bodily injury. (§§ 187; 211; 212.5, subd. (c); 215; 207, subd. (a); 664/460, subd. (a); Veh. Code, § 2800.3.) During the course of the

---

[1] Except where otherwise indicated, all statutory references are to the Penal Code.

1

criminal proceedings against him, it was determined that Taitano was mentally incompetent to stand trial and he was committed to a treatment facility. To provide context for these events before recounting them in greater detail, we first summarize the applicable statutory scheme.

A. Statutory Scheme

Both the due process clause of the Fourteenth Amendment to the United States Constitution and state law prohibit the state from trying or convicting a defendant who is mentally incompetent to stand trial. (*People v. Ary* (2011) 51 Cal.4th 510, 517–518.)

This mandate is codified in section 1367, which provides that a person cannot be tried while he or she is "mentally incompetent," which is defined to mean that, "as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." (§ 1367, subd. (a).)

Section 1368 instructs the trial court when it must interrupt the court proceedings to determine the defendant's mental competency. "If, during the pendency of an action and prior to judgment . . . a doubt arises in the mind of the judge as to the mental competence of the defendant, he or she shall state that doubt in the record and inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent. . . . At the request of the defendant or his or her counsel or upon its own motion, the court shall recess the proceedings for as long as may be reasonably necessary to permit counsel to confer with the defendant and to form an opinion" with respect to the defendant's competency. (§ 1368, subd. (a).) If the defense attorney tells the court the defendant may be mentally incompetent, the court shall order a competency hearing pursuant to section 1369; if the defense attorney tells the court the defendant is mentally competent, the court may still order a competency hearing. If the court orders a competency hearing, "all proceedings in the criminal prosecution shall be suspended until the question of the present mental competence of the defendant has been determined." (§ 1368, subd. (c).)

Next, section 1369 sets forth the procedure for the court's determination of the defendant's mental competence. In essence, the court appoints a psychiatrist or licensed psychologist to examine the defendant and evaluate the nature of any mental disorder, the defendant's ability to understand the nature of the proceedings or assist counsel in the defense, and, in some circumstances, whether treatment with antipsychotic medication may be medically appropriate and likely to restore the defendant to mental competence, and whether the defendant is a danger to self or others and has the capacity to make decisions regarding the medication. (§ 1369, subd. (a).) The court then holds a hearing or "trial," at which the prosecution and defense offer evidence with respect to the defendant's mental competence and may make a closing argument. (§ 1369, subds. (b)–(f).) If tried by a jury, the defendant is presumed mentally competent unless, by unanimous verdict, the jury finds by a preponderance of the evidence that the defendant is mentally incompetent. (§ 1369, subd. (f).)

Section 1370 then sets forth what happens after the verdict at the competency hearing. "If the defendant is found mentally competent, the criminal process shall resume, the trial on the offense charged or hearing on the alleged violation shall proceed, and judgment may be pronounced." (§ 1370, subd. (a)(1)(A).) But "[i]f the defendant is found mentally incompetent, the trial . . . shall be suspended until the person becomes mentally competent." (§ 1370, subd. (a)(1)(B).)

The balance of section 1370 describes what happens to the defendant who has been found mentally incompetent to stand trial.[2] Before 1974, mentally incompetent defendants could be committed to a state hospital or other treatment facility indefinitely unless they regained competence, a practice that could effectively result in a lifetime sentence without a determination of guilt. That practice was ended by our Supreme

---

[2] Section 1370 applies to a person who, like Taitano, is charged with a felony or alleged to have violated probation for a felony. Section 1370.01 sets forth the procedure if the charge is a misdemeanor or violation of probation for a misdemeanor. Section 1370.1 applies to a person who is incompetent due to a mental disorder but is also developmentally disabled. Section 1370.02 pertains to a person alleged to have violated his post-release supervision or parole. (See § 1367, subd. (b).)

3

Court's decision in *In re Davis* (1973) 8 Cal.3d 798, 801 (*Davis*), which applied the rule of *Jackson v. Indiana* (1972) 406 U.S. 715 and held that "no person charged with a criminal offense and committed to a state hospital solely on account of his incapacity to proceed to trial may be so confined more than a reasonable period of time necessary to determine whether there is a substantial likelihood that he will recover that capacity in the foreseeable future." (*Davis*, at p. 801.) Thus, our Supreme Court decided, when the appropriate state hospital authorities "report . . . that there exists no reasonable likelihood that the person will recover his competence to stand trial in the foreseeable future, then the court should either order him released from confinement or initiate appropriate alternative commitment proceedings under the Lanterman-Petris-Short Act (Welf. & Inst. Code, § 5000 et seq.)." (*Davis,* at p. 807.) The Lanterman-Petris-Short Act (LPS Act) is a comprehensive scheme for the involuntary detention, evaluation, and treatment of mentally ill individuals or persons who, as a result of a mental disorder, are dangerous or gravely disabled.

In response to *Davis*, the Legislature enacted Assembly Bill No. 1529 in 1974, which amended the procedure for the commitment of mentally incompetent criminal defendants (e.g., § 1370) and the scope of long-term commitments under the LPS Act. (*In re Polk* (1999) 71 Cal.App.4th 1230, 1237 (*Polk*).) The amendment rewrote section 1370 to establish the procedure a criminal court must follow after a defendant has been found incompetent, including the suspension of criminal proceedings, the preparation of progress reports at specified intervals, the requirement that the defendant be returned to court if a report indicates there is no substantial likelihood competence will be regained in the foreseeable future, the establishment of a three-year limit on the commitment period, and the authorization of conservatorship proceedings when the defendant is returned to court. (*Polk,* at p. 1237.) The bill added to the LPS Act's definition of "gravely disabled" to include persons who have been found mentally incompetent and are

4

charged with certain felonies, thereby creating the "Murphy conservatorship" named after the legislator who sponsored the bill. (*Id*. at pp. 1236–1237.)[3]

Under section 1370, as it read at the time relevant to this case, the court determines the state hospital or treatment facility to which the mentally incompetent defendant shall be delivered, and determines whether the defendant lacks capacity to make decisions regarding the administration of antipsychotic medication. (§ 1370, subd. (a)(1)(B)(i), (a)(2).)

Within 90 days of commitment, the medical director of the treatment facility must make a written report to the court and the community program director concerning the defendant's progress toward recovery of mental competence and whether any administration of antipsychotic medication remains necessary. (§ 1370, subd. (b)(1).) Thereafter, at six-month intervals or until the defendant becomes mentally competent, the facility must report in writing regarding a confined defendant's progress toward recovery of mental competence. (§ 1370, subd. (b)(1).)

If the treatment facility determines that the defendant has *regained* mental competence, the fact of restoration to competency must be certified to the court, which in turn decides whether to approve the certification. (§ 1372, subd. (a)(1), (d); § 1370, subd. (a)(1)(C).) If the court approves the certification, criminal proceedings are resumed.

If the treatment facility reports that the defendant has not recovered mental competence and there is *no substantial likelihood* that he or she will regain competence in the foreseeable future, the defendant is "returned to the court for proceedings pursuant to [section 1370, subdivision (c)(2)]." (§ 1370, subd. (b)(1)(A).) Under that statute, if it

---

[3] Welfare and Institutions Code section 5008, subdivision (h)(1) now sets forth two alternative definitions of "gravely disabled," the first of which could be met by members of the population at large (standard LPS conservatorships, for persons who, as a result of a mental health disorder, are unable to provide for basic personal needs for food, clothing, or shelter) and the second of which is relevant only to criminal defendants charged with certain types of felonies who have been found mentally incompetent to stand trial under section 1370, in that the person is unable due to a mental health disorder to understand the nature and purpose of the proceedings taken against him or her and to assist counsel in the defense in a rational manner (Murphy conservatorships).

appears to the court that the defendant is "gravely disabled" (as defined in Welf. & Inst. Code § 5008, subd. (h)(1)(B)), the court shall order the conservatorship investigator to initiate Murphy conservatorship proceedings pursuant to Welfare and Institutions Code section 5350. Alternatively, the court may dismiss the charges and order the defendant released. (§ 1370, subds. (d), (e); see § 1385.)

If the defendant has not recovered mental competence but the report discloses there *is* a *substantial likelihood* that he or she will regain competence in the foreseeable future, the defendant remains in the state hospital or other treatment facility up to a statutory maximum confinement period. (See § 1370, subd. (b)(1).)

If the defendant remains hospitalized for *18 months*—the halfway mark to the statutory maximum commitment period—he or she is "returned to the committing court where a hearing shall be held pursuant to the procedures set forth in Section 1369." (§ 1370, subd. (b)(4). Italics added.) In other words, the court in this instance must determine again the defendant's competency to stand trial at a hearing. The court also determines if the defendant is gravely disabled for purposes of a conservatorship. (§ 1370, subd. (c)(2).)[4]

Finally, the defendant is returned to court at the *end of the maximum statutory commitment period*. Subdivision (c)(1) of section 1370 reads: "At the end of three years from the date of commitment or a period of commitment equal to the maximum term of imprisonment provided by law for the most serious offense charged in the information, indictment, or misdemeanor complaint, . . . whichever is shorter, but no later than 90 days prior to the expiration of the defendant's term of commitment, a defendant who has not recovered mental competence shall be returned to the committing court." The court then determines whether the defendant is gravely disabled for purposes of a conservatorship. (§ 1370, subd. (c)(2).)

---

[4]    At each review by the court specified in section 1370, subdivision (b), the court additionally determines if the security level of housing and treatment is appropriate and decides issues concerning administration of antipsychotic medication. (§ 1370, subd. (b)(6).)

The criminal action remains subject to dismissal in the interest of justice pursuant to section 1385. (§ 1370, subd. (d).) If the criminal action is dismissed, the defendant must be released from commitment, without prejudice to the initiation of proceedings under the LPS Act. (§ 1370, subd. (e).)

In sum, as relevant here, section 1370 provides that a defendant, once found to be mentally incompetent and committed to a treatment facility, will be returned to court at specific times for specific purposes: (1) if the defendant is certified to have regained competence, for the court to approve the certification; (2) if the defendant has no substantial likelihood of regaining competence, to determine if the defendant is appropriate for a conservatorship; (3) if the defendant has been committed for 18 months, to hold a second competency hearing under section 1369; and (4) at the end of the statutory maximum commitment period, to determine if the defendant is appropriate for a conservatorship. The only time the statute expressly authorizes the defendant to be returned to the court for a competency hearing is at the 18-month commitment mark. In this manner, the Legislature balanced the defendant's right not to be tried if mentally incompetent, the defendant's right not to be committed for an unreasonable period to see if his competence will be restored, and the People's interest in prosecuting defendants who are, in fact, competent to stand trial.

7

B.  Taitano's Commitment

　　　　1.  Section 1368 and Section 1369 Proceedings

In March 2011, Taitano's defense counsel declared a doubt as to Taitano's competence, and the trial court ordered a competency hearing.  (§ 1368.)  Three evaluators opined that Taitano was incompetent to stand trial because he suffered from delusions making it impossible for him to provide rational assistance to his attorney in his defense.  In November 2011, a jury found Taitano competent to stand trial, but the trial court granted a motion for judgment notwithstanding the verdict and found him incompetent.  (§ 1369.)  The court committed Taitano to the Department of Mental Health for treatment in April 2012.

　　　　2.  Section 1370 Proceedings

In May 2013, Atascadero State Hospital reported there was no substantial likelihood Taitano would regain mental competence in the foreseeable future.  (§ 1370, subd. (b)(1).)  Accordingly, Taitano was returned to court in July 2013 for proceedings pursuant to section 1370, subdivision (c)(2).  (See § 1370, subd. (b)(1)(A).)  The court referred the matter to the Contra Costa Public Guardian, as the conservatorship investigator for the county, to investigate conservatorship. (See § 1370, subd. (c)(2).)

　　　 The public guardian concluded that Taitano was not gravely disabled within the meaning of the LPS Act for a Murphy or other conservatorship.  (See Welf. & Inst. Code, § 5008, subd. (h)(1)(A)–(B).)  While he posed a danger to others in the community, the threat he posed was not attributable to a mental illness or his diagnosed disorder.  No conservatorship petition was filed.

8

### 3. Taitano's Initial Habeas Petition and Appeal

In November 2013, Taitano filed a petition in the trial court for a writ of habeas corpus, seeking his release. The People filed a petition for a writ of mandate under Code of Civil Procedure section 1085, asking the court to find that the public guardian abused its discretion and to hold a hearing to determine if Taitano is appropriate for a conservatorship.

The trial court granted Taitano's petition for writ of habeas corpus and denied the People's petition for a writ of mandate in February 2014. The court concluded that the public guardian's decision not to file a petition for a Murphy conservatorship was a nonreviewable exercise of discretion.

The People appealed from the orders, and we reversed. Although the conservatorship investigator has the sole discretion to determine whether a petition should be filed after a section 1370, subdivision (c)(2) referral, the court may "review[] the . . . decision for abuse of discretion and, if appropriate, order[] the Public Guardian to exercise its discretion in accordance with the law." Because it did not appear that the conservatorship investigator had obtained the requisite opinion from a qualified mental health professional, we reversed the order granting the habeas petition and denying the mandamus petition, and remanded for the trial court to direct the Public Guardian to obtain a psychological or psychiatric evaluation addressing the elements of a Murphy conservatorship and to hold a new hearing.

### 4. Section 1370 Proceedings After Remand

On remand, at the public guardian's direction, Taitano was evaluated by a licensed psychologist with a doctorate in forensic psychology. In a March 2015 report, the psychologist opined that Taitano was not gravely disabled for purposes of imposing a Murphy conservatorship because he "does not appear to meet the requirement . . . that he is incompetent as a result of a mental health disorder" (underscoring omitted) and also because his risk of dangerousness was "not a result of mental disorder, but of criminal behavior and the ingestion of methamphetamines." The psychologist recommended that

9

no petition for a Murphy conservatorship be filed, but that "Taitano should be re-evaluated for competency at this time."

On April 1, 2015, the People filed a "Motion to Re-evaluate the Defendant's Competency" in Taitano's criminal and habeas cases. The People argued that Taitano's competence to stand trial was not static and there had been a substantial change of circumstances and new evidence as to his competence, including the psychologist's recent evaluation and information in Taitano's jail and Atascadero State Hospital medical records that postdated the 2011 competency trial.[5]

In opposition to the People's motion, Taitano argued that the court had no authority to order him reevaluated for competence, and the court was required to order his immediate release. He maintained that the court lacked authority to hold a new competency hearing because it had not received a certification that he has been restored to competence by certain mental health officials (including the county medical health director) or the conservator, as specified in section 1372, subd. (a)(1).

The court ordered the county medical health director, Dr. Omri Berger, to reevaluate Taitano's competence. Berger filed an August 2015 report, which was based in part on interviews of Taitano in July and August 2015. The county medical health director's reevaluation of Taitano was that Taitano was *not competent* to stand trial.

In August 2015, Taitano filed a supplement to his pending habeas petition. He argued he must be released from custody because "the state hospital has found that he is unlikely to be restored [to competence] in the foreseeable future, he has since reached his maximum commitment, and the Public Guardian has concluded that he does not meet criteria for a conservatorship." (See § 1370, subd. (b)(1), (c)(1), (c)(2).)

---

[5] In the alternative, the People argued Taitano's competence should be assessed pursuant to section 1370, subdivision (b)(4), which provides that "[a]ny defendant who has been committed or has been on outpatient status for 18 months and is still hospitalized or on outpatient status shall be returned to the committing court where a hearing shall be held pursuant to the procedures set forth in Section 1369." In this appeal, the People do not contend a competency hearing can be ordered for Taitano under section 1370, subdivision (b)(4).

10

The prosecutor opposed Taitano's habeas petition and made three alternative requests to avoid dismissal of the case and Taitano's release: (1) a second trial on the issue of Taitano's competency under section 1368 due to "new" (that is, postdating the earlier competency trial) facts or circumstances; (2) recommitment of Taitano to the state hospital for periodic 90 day reviews based on new facts or circumstances; or (3) reevaluation of Taitano for a Murphy conservatorship based on new facts or circumstances.

At a hearing on the People's motion to reevaluate Taitano's competency and Taitano's habeas petition in September 2015, the court tentatively rejected the People's second and third alternative forms of relief, observing there were no grounds for a Murphy conservatorship because there was no evidence Taitano was currently dangerous as a result of a mental disorder, and Taitano could not be sent for additional treatment because he already served his maximum statutory commitment—which the prosecutor did not dispute. As to the request for a new competency hearing, the court took note of an appellate court decision (since depublished) that supported the prosecutor's position: the court had held that section 1368 authorizes a court to hold a new competency hearing for an incompetent defendant if new evidence or changed circumstances suggest he may be presently competent. In light of that appellate authority, the trial court stated: "I'm not making a finding today that there is going to be another competency trial . . . [However,] I intend to have a hearing at which the expert[s] that testified at the 2011 trial come to court, are presented with this additional information . . . , and [are] asked . . . what difference if any would this make to your evaluation? . . . And then after that hearing make a determination whether I think another competency trial is required." The trial court continued the hearing so it could review transcripts from the 2011 trial. At a hearing in October 2015, the court reviewed the 2011 trial evidence and again continued the matter for a further hearing.

Before the next hearing date, the California Supreme Court ordered depublication of the appellate opinion on which the trial court had relied.

At the reconvened hearing in November 2015, the trial court concluded that, due to the depublication, it had no authority to hold a new competency hearing. The court denied the People's motion to reevaluate Taitano's competency, granted Taitano's habeas petition, and ordered Taitano released. There is no indication in the record that the felony charges against Taitano have been dismissed.

The People appealed from the order granting Taitano's writ of habeas corpus and (implicit) order denying the request for a new competency hearing.

## II. DISCUSSION

The People contend the trial court erred because section 1368 authorizes the court to conduct a new hearing to determine Taitano's mental competence. As framed by the parties' briefs, we are called upon to address a narrow question: After a defendant has been adjudicated mentally incompetent to stand trial under section 1369, the commitment facility has determined under section 1370 that there is no substantial likelihood the defendant will regain mental competence in the foreseeable future, the Public Guardian has determined the defendant is not appropriate for a Murphy conservatorship, and the defendant has served the entirety of the statutory maximum commitment term, can the trial court rely on section 1368 to hold a new hearing as to the defendant's mental competence to stand trial on the criminal charges?

In answering this question, we apply the fundamental precepts of statutory interpretation. We begin with the statutory language, according each word a commonsense meaning in light of both the language used and the evident purpose of the statute. (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 775 (*Hughes*); *Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1196 (*Wallace*).) If the statutory language is unambiguous, there is no need for judicial construction. (*Hughes*, at p. 775; *Wallace*, at p. 1197.) Only if the language is susceptible to more than one reasonable meaning do we turn to other rules of statutory construction and consider other indicia of legislative intent and public policy. (*Wallace*, at p. 1197.)

Because Taitano has been adjudicated mentally incompetent to stand trial and served his commitment term, his circumstances are described in section 1370 and we must begin our analysis there. We will then turn to section 1368.

A. Section 1370 Does Not Authorize a New Competency Hearing

After Taitano was committed to a treatment facility, the facility determined that it was not reasonably likely he would regain competence in the foreseeable future. That placed Taitano squarely within the province of section 1370, subdivision (b)(1)(A), which provides that he would be "returned to the court for proceedings pursuant to [section 1370, subdivision (c)(2)]." Pursuant to section 1370, subdivision (c)(2), the court determines whether the defendant is "gravely disabled" and whether to order the conservatorship investigator to initiate conservatorship proceedings. Section 1370, subdivision (c)(2) does not provide for Taitano to be returned to court for a new *competency* hearing.

Taitano also falls under section 1370, subdivision (c)(1), in that he has served his maximum time of commitment. Under subdivision (c)(1), he was to be "returned to the committing court," but the statute does not provide for a competency hearing. Instead, the statute directs the court to determine whether he is gravely disabled for purposes of instituting conservatorship proceedings.

By its terms, therefore, nothing in section 1370 calls for Taitano, in his present circumstances, to be returned to the court for a competency hearing.

Instructive in this regard is *People v. Quiroz* (2016) 244 Cal.App.4th 1371 (*Quiroz*). There, the defendant was declared incompetent to stand trial and committed for treatment, the state hospital certified him to be mentally competent and proceedings resumed, and later the court again found him incompetent and committed him for treatment. In its final report, the state hospital stated that the defendant remained incompetent to stand trial and was unlikely to regain competency in the foreseeable future. The court ordered the public guardian to initiate proceedings for a Murphy conservatorship, but the public guardian found that the defendant did not meet the requirements for a conservatorship. The defendant filed a motion to be released from

13

custody and to dismiss the information, but the trial court denied the motion, reasoning that since a hearing is contemplated when a hospital certified restoration of competency, the court must also be able to hold a hearing when the hospital suggests the defendant is incompetent. The court held the competency hearing, concluded defendant was restored to competency, and reinstated criminal proceedings. (*Id*. at pp. 1375–1377.)

The court of appeal in *Quiroz* held that, in light of the statutory scheme, the trial court exceeded its jurisdiction when it convened the competency hearing after the hospital had issued its no substantial likelihood certification. (*Quiroz, supra*, 244 Cal.App.4th at pp. 1375, 1377.) The court noted that a competency hearing is a special proceeding, such that the statutory procedure must be strictly followed. (*Id*. at p. 1379.) The court concluded: "If a defendant is returned to court upon a finding of no substantial likelihood or upon completing the maximum term of commitment, the trial court may determine only whether to initiate Murphy conservatorship proceedings, dismiss the charges against the defendant and order him released from confinement, or dismiss the charges and initiate other appropriate commitment proceedings under the LPS Act. [Citations.] The court does not have authority to convene a competency hearing at that point." (*Id*. at p. 1377.)

*Quiroz* viewed the statutory scheme essentially as we do. In the words of the court in *Quiroz*: "In the amended competency statutes, the Legislature provided for competency hearings in certain circumstances, but not in the circumstance presented by this case. The trial court must convene a competency hearing while the criminal action is pending and the defendant is not under commitment if the court doubts the defendant's competency. (§ 1368.) The trial court must convene a competency hearing after the defendant has been committed for 18 months. (§ 1370, subd. (b)(4).) And the trial court may convene a competency hearing when the state hospital certifies the defendant has regained competence. (§ 1372, subd. (c); [citations].) [¶] However, nowhere in the statutes did the Legislature authorize a trial court to convene a new competency hearing upon the prosecution's request when the hospital returns the defendant from commitment at the end of three years or upon the hospital's finding of no substantial likelihood of

14

regaining competency to stand trial. Nor do the statutes authorize the trial court to convene a competency hearing upon the prosecution's request when the public guardian determines not to initiate conservatorship proceedings. . . . [¶] The statute's language demonstrates the Legislature did not intend for courts to hold competency hearings upon a defendant's return after completing the maximum commitment. When the Legislature intends the court to hold a competency hearing, it expressly says so." (*Quiroz,* at p. 1380.)

In sum, section 1370 does not itself authorize the trial court to hold a competency hearing in the circumstances faced by Taitano. Indeed, the People do not contend otherwise. Instead, they say the hearing can be held by returning to section 1368.

B. Section 1368 Does Not Authorize a New Competency Hearing Here

For the following reasons, section 1368 does not apply to a defendant who, like Taitano, has already been declared mentally incompetent, already been determined not to have a reasonable likelihood of regaining competence in the foreseeable future, and already served the statutory maximum commitment term.

1. Statutory Language

Section 1368 reads: "If, *during the pendency of an action and prior to judgment. . .* a doubt arises in the mind of the judge as to the mental *competence* of the defendant, he or she shall state that doubt in the record," inquire of defense counsel, and depending on counsel's position must or may order a competency hearing. If the court orders a competency hearing, "*all proceedings in the criminal prosecution shall be suspended* until the question of the present mental competence of the defendant has been determined." (§ 1368, subd. (a), (c). Italics added.)

The plain meaning of the statutory language is that the court can stop criminal proceedings to make sure the defendant is competent to stand trial. Nothing in the statute indicates it also applies to determine if a defendant is no longer incompetent despite the treatment facility's evaluation.

15

First, the statute refers to a judge's doubt "as to the mental *competence* of the defendant," not a doubt as to the mental competence or *incompetence* of the defendant. (§1368 (a).)  Second, the statute refers to a doubt arising as to the defendant's competence "during the pendency of an action and prior to judgment."  (Italics added.)  Here, as of the time of the habeas petition hearing, it was still "prior to judgment" since there was no conviction or dismissal of the charges.  But "during the pendency of the action" must mean something else, since both phrases must be given effect.  In light of the evident statutory purpose that an incompetent defendant not be held to stand trial, the phrase "during the pendency of an action" must refer to a time when criminal proceedings are still *active* and pose a threat that the defendant will be tried and convicted.  Third, because section 1368 directs the court to suspend "all proceedings in the criminal prosecution" if it grants a competency hearing, section 1368 must apply at a time when there are still criminal proceedings to suspend.  Taking the statutory language in its totality, section 1368 applies when a defendant is still being prosecuted, such that there is a risk a mentally incompetent person is being tried in violation of section 1367; the statutory language does not suggest it was intended to apply after the defendant has already been committed and the criminal proceedings have been suspended.[6]

### 2. Statutory Scheme

The structure of the statutory scheme also indicates that section 1368 does not apply to defendants who, like Taitano, have already been committed to a treatment facility and served their maximum statutory commitment period.

The statutory scheme begins with section 1367, which sets forth the fundamental principle that mentally incompetent defendants cannot be tried.  Its ensuing sections then proceed to explain, in a step-by-step chronological approach, what happens to the

---

[6]     Although *Quiroz* did not decide the scope of section 1368 directly, it characterized the statute in a manner consistent with our view here.  The court stated:  "The trial court must convene a competency hearing while the criminal action is pending *and the defendant is not under commitment* if the court doubts the defendant's competency. (§ 1368.)"  (*Quiroz, supra*, 244 Cal.App.4th at p. 1380.  Italics added.)

16

defendant. Section 1368 tells us that criminal proceedings must be stopped if the defendant's competency is questioned by the court, so that competency can be determined. Section 1369 sets forth the procedure for then determining at a hearing whether the defendant is competent. And then section 1370 addresses what happens to the defendant if—as has occurred here with Taitano—the defendant has been found at the hearing to be incompetent. Section 1370 never refers back to section 1368. Instead, it describes a set of procedures which, as explained *ante*, do not mention any new competency hearing except at the 18-month mark of confinement.

### 3. The Cases on Which The People Rely Are Inapposite

The People refer us to two cases asserting that a second competency hearing can be held under section 1368 upon changed circumstances after the defendant was found at the first hearing to be *competent*. (*People v. Murrell* (1987) 196 Cal.App.3d 822, 827 [after a finding of competence, the court was "obligated to reinitiate section 1368 proceedings only if defendant presented substantially new evidence or changed circumstances"]; *People v. Zatko* (1978) 80 Cal.App.3d 534, 548 [court may not avoid responsibility to make proper inquiry regarding a defendant's capacity to stand trial by relying solely upon a pretrial decision or pretrial psychiatric reports where, "during the trial or prior to the sentencing, he is presented with a substantial change of circumstances or with new evidence which casts a serious doubt upon the validity of the pretrial finding"]; see also *People v. Jones* (1997) 15 Cal.4th 119, 150 [where defendant has been found competent to stand trial after a competency hearing, the court need not suspend proceedings to conduct a second competency hearing unless it is presented with a substantial change of circumstances or with new evidence casting a serious doubt on the validity of that finding]; *People v. Kaplan* (2007) 149 Cal.App.4th 372, 384 [same].)

In those cases, however, the defendant had been adjudicated to be *competent*, so criminal proceedings were active against the defendant. Obviously in those instances, the court might have to revisit the issue of competency in order to fulfill the statutory purpose of ensuring that a mentally incompetent person is not tried and convicted. Those

17

cases, in other words, targeted situations where section 1368 might still apply. Taitano's case does not.

### 4. Statutory Purposes

The statutory purposes of section 1367 et seq. are to make sure (1) a mentally incompetent criminal defendant is not tried, and (2) the mentally incompetent defendant is confined for incompetency only for a period reasonable for his or her competence to be restored. (E.g., *People v. Ary, supra,* 51 Cal.4th at pp. 517–518; *Davis, supra*, 8 Cal.3d at p. 801; *Polk, supra,* 71 Cal.App.4th at pp. 1236–1237.) Here, Taitano has served his maximum statutory commitment period without restoration to competency and has been found inappropriate for a conservatorship. Since he served the maximum term of commitment under the terms of the statute, he cannot be confined any longer. (See also *Davis, supra*, 8 Cal.3d at p. 801.) And since Taitano must be released under the terms of the statute, it is unnecessary to have a competency hearing to determine whether he should be released.

The People argue that the court should nonetheless be able to conduct a new competency hearing because *another* purpose of the statutory scheme is to ensure that defendants adjudicated as incompetent will stand trial for a criminal offense if they become competent. (Citing *People v. Superior Court (McPeters)* (1985) 169 Cal.App.3d 796, 798.) *McPeters*, however, did not hold that the statutory scheme had such a purpose, but instead "accept[ed] defendant's premise that the purpose of section 1368 is to avoid the due process violation which results from conviction of an accused person who is mentally incompetent to stand trial." (*Ibid*.) In any event, a concern that a defendant should be brought to trial once restored to competence is *already* addressed by the express directives of the statutory scheme: if at *any point during the maximum statutory confinement period* the committing facility certifies that the defendant's competence is restored and the court approves the certification, criminal proceedings resume (§ 1372, subd. (c)); and even if the treatment facility does not believe the defendant's competence is restored, the court may find that the defendant is competent at a competency hearing required after 18 months of confinement (§ 1370, subd. (b)(4)).

18

These existing procedures account for the fact that a defendant's competency may vary from time to time, and they afford ways for defendants of restored competence to be brought to trial. The People have not explained why these existing procedures are insufficient, let alone why they could be so ineffective as to cause us to conclude that section 1368 authorizes a court to conduct a competency hearing at a time the legislature has not provided for one.[7]

In the final analysis, the legislature knows how to weigh the competing policy considerations and state when a defendant committed to a mental facility under section 1370 may be returned to court, and for what purpose. In the circumstances in which Taitano finds himself—no reasonable likelihood of restoration to competence in the foreseeable future and the end of his maximum commitment time—the Legislature has provided that he can be returned to court for a possible conservatorship, but it has not provided for a new trial on competency.[8]

Appellant has failed to establish its theory that section 1368 authorizes a competency hearing after an incompetent defendant has served the full maximum statutory commitment period.

---

[7]     As for a possibility that the defendant regains competence *after* the maximum commitment period, we discuss the matter *post*.

[8]     According to the concurring and dissenting opinion, the statutory scheme reflects a legislative intent that the trier of fact, not a treatment facility, will be the ultimate decision maker with respect to defendant's competence. In our view, the statutory scheme reflects a legislative intent that the trier of fact will be the ultimate decision maker when the statute says it will be the ultimate decision maker. The concurring and dissenting opinion also cites to dicta stating that, upon the defendant's return to court after the statutory maximum term or the treatment facility's determination of no substantial likelihood of restoration to competency, the court "must redetermine competence." (*Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 169–170.) The source of *Hofferber's* statement is not clear, no reasoning for the statement is provided, and whether the trial court was authorized to redetermine competence was not at issue in the case. As *Quiroz* observed, the statement is dicta, and it has no precedential effect. (*Quiroz, supra*, 244 Cal.App.4th at p. 1381.) An appellate opinion is no authority for a proposition that was never considered or decided. (E.g., *Santisas v. Goodin* (1998) 17 Cal.4th 599, 620.)

C.  Authority to Conduct a Section 1369 Competency Hearing is Not Implied

There is no question that section 1370 does not *expressly* authorize a competency hearing when a defendant committed under section 1370 has served the mandatory statutory commitment period, without a determination by specified individuals that he or she has been restored to competence.  We have also concluded that, based on appellant's arguments, section 1368 cannot be relied upon as authority for conducting a competency hearing in that circumstance.  We now turn to an argument appellant makes in its appellate reply brief—that the authority to hold a competency hearing might be *implied* in light of section 1370, subdivision (d).

Appellant argues that, under section 1370, subdivision (d), after a defendant is returned to court "the criminal action remains subject to dismissal pursuant to Section 1385."  Appellant contends this implies the court may hold a new competency hearing after a defendant has served his or her maximum commitment term:  if the court could not reassess a defendant's competency when he or she reached the maximum term of commitment, dismissal of the charges would be mandatory, not permissive.

Appellant misconstrues section 1370, subdivision (d).  In relevant part, the provision states:  "With the exception of proceedings alleging a violation of mandatory supervision, the criminal action remains subject to dismissal pursuant to Section 1385."  Section 1385 permits the court to dismiss an action in furtherance of justice.  Therefore, subdivision (d) of section 1370 merely says that the usual power to dismiss the underlying criminal action does not apply in a case alleging violation of mandatory supervision (formal probation).  Moreover, the subdivision applies not only to the point at which the defendant has fulfilled the maximum commitment period, but to earlier times *during* the defendant's commitment period as well.  The fact that the court may dismiss the criminal action *before* the end of the commitment period would itself account for the language that the action remains only "subject to" dismissal:  it does not mean that charges will remain pending after the commitment period or that the court could refuse to release the defendant once the maximum commitment period has been completed.  In any event, the mere fact that the statute does not expressly mandate dismissal of the charges

20

when the maximum commitment term has expired does not mean the Legislature secretly intended a new competency hearing that it did not prescribe.[9] Appellant has not shown that section 1370, subdivision (d) authorizes the trial court to conduct a new competency hearing under the circumstances of this case.

We must keep in mind the nature of our inquiry. At issue is a court's power to conduct a section 1369 competency hearing—a *creation of statute* that cannot be held without legislative authority. A hearing to determine the competency of a defendant to stand trial is authorized by only two statutory provisions: section 1368 (which, as discussed *ante*, is inapplicable to Taitano's situation) and section 1370, subdivision (b)(4) after 18 months of commitment (which neither party contends applies here). The fact that section 1370, subdivision (c)(1) provides that, upon serving the full statutory maximum commitment time, the defendant must be "returned to court," *without* authorizing a competency hearing but instead requiring a determination regarding conservatorship, confirms that the court at that juncture has two choices: order a conservatorship (or other commitment proceedings) if appropriate, or release the defendant. These are precisely the two choices our Supreme Court mentioned in *Davis*. (*Davis, supra*, 8 Cal.3d at p. 807.) These are the two choices identified in *Polk* and *Quiroz*. (*Polk, supra*, 71 Cal.App.4th at p. 1236; *Quiroz, supra*, 244 Cal.App.4th at pp. 1377, 1380–1381.) And these are the two choices described by the deputy attorney general who worked with the Legislature for 18 months to develop the 1974 amendments to the competency statutes. (Parker, *California's New Scheme For The Commitment of Individuals Found Incompetent To Stand Trial* (1975) 6 Pacific L.J. 484, 492 & fn. 70.) There is no provision in the statute that a new competency hearing could be held at that

---

[9]     Indeed, if there are questions as to what the court should do with the *charges* after the maximum commitment period has expired, holding a new competency hearing will do little to answer them. If the new competency hearing is held, a defendant who is found incompetent (and unsuitable for a conservatorship) will still have to be released even though the charges remain pending. What the court should do with the charges in this case is not at issue in this appeal.

21

juncture, or even an indication that the Legislature has considered whether there should be.

In sum, appellant has not demonstrated that the trial court had express or implied authority to hold a new competency hearing under the particular circumstances of this case. On that basis, the orders must be affirmed.

Nonetheless, looking forward from a practical point of view, one might wonder what *should* happen when an incompetent defendant has served the maximum commitment term, is ineligible for a Murphy conservatorship, and is released from confinement, yet the trial court declines to dismiss the charges. Should the statute be amended to specify that the court *must* dismiss the charges if the defendant is released at the end of the commitment period after a finding of no substantial likelihood of restoration to competency? Or should section 1370 be amended to authorize a new competence hearing, at least upon a showing of new facts and circumstances indicating a change in competency, so the prosecution may proceed if the defendant is found to have regained competency after release from confinement? Just as appellant has not demonstrated that the Legislature intended to allow courts to hold a competence hearing when the statute does not authorize one, it is not clear that the Legislature would want the prosecution to be automatically and forever barred from proceeding if the defendant regained competency, merely because of the defendant's release from confinement.

While these are interesting questions, it is not our role to answer them. Nor would it be our prerogative to tinker with the legislative scheme or add our own language to its provisions in order to make it say what it does not say. After all, the availability of a competence hearing in this context turns on a balancing of important considerations: the right of a defendant not to remain in a treatment facility longer than the statutory maximum; the right of the defendant not to be tried if incompetent; the interest in prosecuting a competent individual for charged crimes; the state interest in public safety; and the appropriate division of responsibility between the treatment facility and the court, among others. And a ruling that a competency hearing is available in Taitano's situation would open a Pandora's box of other questions: would a competency hearing also be

22

proper at all the other junctures the legislature did not provide for one? Would the competency hearing also be available under the parallel proceedings set forth in sections 1370.01, 1371, and 1370.2? Would there be a limit to the number of times the People could compel the court to hold additional competency hearings, or the period within which the People could request one? We have not been equipped in this case to decide these matters, since the parties have focused instead on section 1368. And even if these matters had been fully briefed, the weighing of the competing policy interests and the consideration of the ensuing ramifications is a matter for the Legislature, not the courts, to sort out in the first instance. If this case suggests a gap in the statute, it would not be our place to fill it.

Appellant has failed to demonstrate error in the trial court's rulings.


### III.  DISPOSITION

The orders are affirmed.

_____

NEEDHAM, J.


I concur.


_____

SIMONS, ACTING P.J.

BRUINIERS, J., Concurring and dissenting.

I concur in the disposition.  I do not agree, however, with my colleagues'
conclusion that the Legislature clearly intended that no further competency hearing
would occur in the circumstances presented here, and I do not understand our holding to
shield Taitano from further prosecution on the currently pending charges—an issue the
majority does not directly address.

I agree with the majority that the Legislature appears to have provided a
reasonably comprehensive scheme for review of competency and for competency
proceedings within the three-year commitment limit imposed by section 1370.  I disagree,
however, that the Legislature intended only two options when an incompetent defendant
has been committed for the maximum time allowed for treatment to restore competence
and is returned to the court without a finding of competence.  The Legislature has simply
failed to specifically provide what is to be done in that circumstance, and I find nothing
in the legislative history to suggest the Legislature ever contemplated such a situation or
intended to bar a competency hearing after the three-year commitment limit.

Applying ordinary principles of statutory construction,[1] I believe the following
principles may be inferred from the overall competency statutory scheme and its
legislative history.

_____

[1]     "When construing a statute, we must 'ascertain the intent of the Legislature so as
to effectuate the purpose of the law.'  [Citation.]  The words of the statute are the starting
point.  'Words used in a statute . . . should be given the meaning they bear in ordinary
use.  [Citations.]  If the language is clear and unambiguous there is no need for
construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . .'
[Citation.]  If the language permits more than one reasonable interpretation, however, the
court looks 'to a variety of extrinsic aids, including the ostensible objects to be achieved,
the evils to be remedied, the legislative history, public policy, contemporaneous
administrative construction, and the statutory scheme of which the statute is a part.'
[Citation.]  After considering these extrinsic aids, we 'must select the construction that
comports most closely with the apparent intent of the Legislature, with a view to

1

First, the scheme recognizes that mental incompetence may be transitory and that a defendant determined to be incompetent at one point in time may later regain capacity and competence.  (See Pen. Code, §§ 1370, subd. (a)(1)(C), 1372, subds. (a)(1), (b), (c).)[2] If a defendant is found to be incompetent, "the trial . . . shall be *suspended* until the person becomes mentally competent."  (§ 1370, subd. (a)(1)(B), italics added.)  In other words, criminal proceedings are merely held in abeyance while the defendant receives treatment, and the issue of competence remains subject to periodic review.  (§ 1370, subd. (b)(1), (4).)

Second, the statutory scheme recognizes that a defendant's competence at any point in time may be a disputed issue of fact, as it was here, subject to determination by the court or by a jury.  It is clear that the Legislature did not intend a commitment facility to have the final word on a committed defendant's competence.  When a defendant is certified as restored to competence during the commitment period, the court holds a competency hearing if the issue is contested and at that hearing the defendant may or may not be found competent despite the facility's certification.  (§ 1372, subds. (a), (c), (d); *People v. Mixon* (1990) 225 Cal.App.3d 1471, 1482; *People v. Murrell* (1987) 196 Cal.App.3d 822, 826.)  When a defendant has been committed for 18 months, the court must hold a new competency hearing at which the defendant may or may not be found competent despite the facility's failure to certify the defendant as having regained competence.  (§ 1370, subd. (b)(4).)  When a defendant under a "Murphy conservatorship" (Welf. & Inst. Code, § 5008, subd. (h)(1)(B)) is certified as restored to competence, the court again may hold a competency hearing if the issue is contested and the defendant may or may not be found competent despite the certification.  (§ 1372,

---

promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' " (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977–978.)

[2]      Undesignated statutory references are to the Penal Code.

subd. (b)–(d); Welf. & Inst. Code, § 5369.)[3]  Professional assessment is thus not necessarily the final word.

Third, one purpose of the scheme must be to ensure a *competent* defendant's prosecution.  (See § 1368 [authorizing a trial court to inquire into a defendant's competence "during the pendency of an action" (i.e., while the charges are still pending) and "prior to judgment"].)  The majority at one point appears to acknowledge that the Legislature balanced "the People's interest in prosecuting defendants who are, in fact, competent to stand trial" against incompetent defendants' interests in not being tried or indefinitely confined.  (See *People v. Superior Court* (*McPeters*) (1985) 169 Cal.App.3d 796, 798 ["[n]either justice nor due process of law is served if defendant is erroneously found to be incompetent to stand trial when, in fact, he is competent"].)  Later, however, the majority writes that the "statutory purposes of section 1367 et seq." are only to protect the incompetent defendant's interests, and appears to question the People's argument that one purpose of the statutory scheme is "to ensure that defendants adjudicated as incompetent will stand trial for a criminal offense if they become competent."[4]

I find it inconceivable as a matter of common sense that the Legislature did not intend to ensure the prosecution of defendants like Taitano, charged with serious felonies, including homicide, if they later regained competence.  On the contrary, it is easy to infer

---

[3]    In dicta, the Supreme Court has also suggested that when a defendant is returned as having completed the maximum term of confinement the "court must then redetermine competence," which implies that a court could find a defendant had regained competence despite the absence of a certification of restoration to competence.  (*Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 169.)

[4]    The majority writes:  "The statutory purposes of section 1367 et seq. are to make sure (1) a mentally incompetent criminal defendant is not tried, and (2) the mentally incompetent defendant is confined for incompetency only for a period reasonable for his or her competence to be restored.  (E.g., *People v. Ary* [(2011)] 51 Cal.4th [510,] 517–518; *In re Davis*,[(1973)] 8 Cal.3d [798,] 801; *In re Polk* [(1999)] 71 Cal.App.4th [1230,] 1236–1237.)"  In my view, the cited authority does not support the majority's limited view of the statutory purposes underlying the competency scheme.

3

from the statutory structure—which requires a defendant to be returned to court for possible prosecution whenever the defendant is certified as restored to competence (§§ 1370, subd. (b)(1), 1372, subds. (a)–(c)) and after 18 months regardless of whether the defendant was so certified (§ 1370, subd. (b)(4))—that the Legislature recognized that "the government has an important interest in prosecuting defendants for serious crimes with which they are charged and in ensuring their mental competence for the duration of their prosecutions." (*United States v. Valenzuela-Puentes* (10th Cir. 2007) 479 F.3d 1220, 1226 [discussing due process considerations relevant to involuntary medication of an incompetent defendant]; see *Sell v. United States* (2003) 539 U.S. 166, 180 [in same context, holding the "Government's interest in bringing to trial an individual accused of a serious crime is important"]; Parker, *California's New Scheme For The Commitment Of Individuals Found Incompetent To Stand Trial* (1975) 6 Pacific L.J. 484, 503 (Parker) ["where there is probable cause that the defendant has committed a violent felony, there is a substantially greater state interest in ultimately bringing the defendant to trial"].)[5]

---

[5]    The legislative history of California's competency statutes also demonstrates that the Legislature had this purpose in mind. As noted *ante*, the statutory scheme allows for a new competency hearing if a defendant under a Murphy conservatorship is certified as restored to competence, which may occur long after expiration of the maximum statutory period of commitment to treatment to restore a defendant to competence. When the competency statutes were first enacted in 1974, the Legislature provided that all incompetent defendants facing serious criminal charges (such as Taitano's) that had not been dismissed would qualify for a Murphy conservatorship. (Compare Welf. & Inst. Code, § 5008, subd. (h)(2), as amended by Stat. 1974, ch. 1511, § 12, pp. 3321–3322 with Welf. & Inst. Code, § 5008, subd. (h)(1)(B).) Thus, the Legislature's original intent was that all such defendants would indefinitely remain eligible for prosecution if they regained competence (unless the charges against them were dismissed). (See Parker, *supra*, 6 Pacific L.J. at p. 493 [an incompetent defendant under a Murphy conservatorship is "treated in the same manner as any other civilly committed individual, *except that he remains subject to trial on the underlying violent felony*" (italics added)].)

In 1980, the California Supreme Court held that an incompetent defendant may be indefinitely committed under a Murphy conservatorship only upon a finding of current dangerousness as a result of a mental disease, defect or disorder. (*Conservatorship of Hofferber, supra,* 28 Cal.3d at pp. 176–177.) Defendants like Taitano who continued to

4

My primary concern with the majority opinion is that it could be construed to treat the maximum term of commitment for treatment to restore a defendant to competence in section 1370, subdivision (c)(1) as a de facto statute of limitations for prosecution. The majority suggests that after an incompetent defendant has served that maximum commitment and has been found ineligible for a Murphy conservatorship, he must be released and no future competency hearing may be held absent a new act of the Legislature. I would not concur in the result in this case if I believed this were the consequence of our decision. I do not believe the prosecutor here is powerless to pursue the charges against Taitano by, for example, dismissing and refiling the charges against him to initiate a new criminal proceeding. That question is not before us, and I do not understand our opinion to address it. Instead, I believe the Legislature has left unintended gaps in the statutory scheme, as amply demonstrated in the case before us, and that we have judicial discretion to bridge those gaps based on inferences from the statutory scheme and a trial court's inherent authority. However, I agree with the majority that we risk opening a "Pandora's box" of other issues if we do so, and thus believe we should exercise our judicial discretion *not* to bridge those gaps here. The Legislature is best equipped to anticipate and address issues associated with those rare

face serious charges but were found not currently dangerous under this standard, therefore, had to be released from commitment for treatment unless they otherwise qualified for an LPS conservatorship. The Legislature never amended the definition of a Murphy conservatorship to reflect the Supreme Court's holding or otherwise enacted legislation responsive to the decision. The Legislature effectively acquiesced to *Conservatorship of Hofferber*, concluding most incompetent defendants would be found currently dangerous and thus indefinitely confined under a Murphy conservatorship and subject to possible future prosecution unless the charges were affirmatively dismissed. I do not believe it is reasonable to infer from this history or from the current statutory scheme a legislative intent that the rare defendant in Taitano's situation, who may not be confined pursuant to a Murphy conservatorship, would therefore be forever shielded from a future competency hearing and prosecution on still-pending serious felony charges. I certainly would not attempt to divine such intent on the part of the Legislature on an issue that it is unlikely to have considered at all.

instances when a defendant facing serious charges remains incompetent at the end of the maximum confinement period for treatment, but does not otherwise qualify for a conservatorship.

_____

BRUINIERS, J.

Superior Court of Contra Costa County, N. 5-132337-7, Lewis A. Davis, Judge.

Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Jeffery M. Laurence, Assistant Attorney General, Laurence K. Sullivan and Bridget A. Billeter, Deputy Attorneys General, for Appellant.

Robin L. Lipetzky, Public Defender for Contra Costa County, Stephanie E. Regular and Diana A. Garrido, Deputy Public Defeners, for Respondent.