Filed 10/26/21 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MARIO RODRIGUEZ,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF SANTA CLARA COUNTY,<br><br>    Respondent;<br><br>THE PEOPLE,<br><br>    Real Party in Interest. | H049016<br>(Santa Clara County<br>Super. Ct. Nos. C1647395,<br>C1650275)<br><br>ORDER MODIFYING OPINION AND GRANTING MOTION TO RESET THE CURRENT FINALITY DATE [CHANGE IN JUDGMENT] |

THE COURT:

Rodriguez's motion to reset the current date of finality is granted.

It is ordered that the opinion filed on October 20, 2021, be modified as follows:

On page 28, in the disposition paragraph, delete the last sentence of the

paragraph and the citation that follows that sentence.

This modification changes the judgment.  (See Cal. Rules of Court, rule

8.490(b)(2)(C) ["If an order modifying a decision changes the appellate judgment, the 30

days [for finality] . . . runs from the filing date of the modification order"].)

_____
Greenwood, P.J.

_____
Grover, J.

_____
Danner, J.

**H049016**
*Rodriguez v. Superior Court*

Filed 10/20/21 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MARIO RODRIGUEZ,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF SANTA CLARA COUNTY,<br><br>    Respondent;<br><br>THE PEOPLE,<br><br>    Real Party in Interest. | H049016<br>(Santa Clara County<br>Super. Ct. Nos. C1647395,<br>C1650275) |

Petitioner Mario Rodriguez seeks extraordinary writ relief from a trial court order overruling his objection to an impending competency restoration hearing under Penal Code section 1372[1] and denying his motion to dismiss two pending criminal cases. As he does in this court, Rodriguez claimed in the trial court that, although a certification of his mental competency had been filed, he had reached the two-year maximum period for an incompetency commitment under section 1370, subdivision (c)(1) (section 1370(c)(1)) before a judicial hearing on the certification had been held and, thus, the trial court lacks authority to hold such a hearing.

---

[1] Unspecified statutory references are to the Penal Code.

The trial court rejected Rodriguez's objection and motion, concluding it could calculate Rodriguez's commitment period after it determined at the hearing whether he had regained competence. The court decided that if it were to find that Rodriguez had regained competence, then the commitment period would end as of the certification date. On the other hand, if it were to find that Rodriguez had not regained competence, then his commitment period would be calculated to the date of the court's finding.

For the reasons explained below, we disagree with the trial court's conclusion regarding the calculation of Rodriguez's commitment period and decide that Rodriguez's commitment ended when his certification of restoration was filed. We therefore agree with the trial court's ultimate determination that Rodriguez's maximum commitment period under section 1370(c)(1) has not yet run, it may hold a hearing under section 1372, and it need not dismiss the criminal cases. Thus, we deny Rodriguez's petition for writ of prohibition or other equitable relief.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Charged Offenses*

On December 29, 2016, the Santa Clara County District Attorney (district attorney) filed two informations against Rodriguez. One charged Rodriguez with making criminal threats on or about August 30, 2016 (§ 422). (Case No. C1647395.) The other alleged multiple crimes that occurred on or about November 6, 2016: assault with a deadly weapon (§ 245, subd. (a)(1)) with an enhancement for personally inflicting great bodily injury (§§ 12022.7, subd. (a), 1203, subd. (e)(3)); oral copulation by force, violence, duress, menace, or fear (former § 288a, subd. (c)(2)); rape by force, violence, duress, menace, or fear (§ 261, subd. (a)(2)); making criminal threats (§ 422); and inflicting corporal injury on a spouse, cohabitant, former spouse, or former cohabitant (§ 273.5, subd. (a)). (Case No. C1650275.)

2

B.  *Proceedings Regarding Rodriguez's Competency to Stand Trial*

In December 2016, when the trial court held Rodriguez to answer for his alleged crimes, it ordered $25,000 bail and no bail allowed, respectively, on Rodriguez's two cases.

### 1.  First Competency Proceedings

One year later, on December 27, 2017, the trial court declared a doubt about Rodriguez's competency to stand trial and suspended the proceedings.  On May 3, 2018, after the parties submitted the question of competency on the examiners' reports, the trial court found Rodriguez not competent.

On May 24, 2018, the trial court signed an order of commitment committing Rodriguez in both of his cases to the Department of State Hospitals (DSH) for placement in a locked psychiatric facility for care and treatment under section 1370, subdivision (a)(2).  The court's order stated the "maximum term is 3 years minus 0 days actual credit" (boldface & capitalization omitted).  On May 25, 2018, the trial court signed an order directing DSH to provide a placement for Rodriguez "by 5:00 p.m., June 29, 2018." (Boldface & underlining omitted.)  Neither the date on which the court provided the requisite commitment documents to DSH (the section 1370 packet) (see § 1370, subd. (a)(3)(A)–(I)) nor the date on which Rodriguez was admitted into a DSH facility appears in the material provided by the parties to this court.

On September 7, 2018, the medical director of Atascadero State Hospital certified that Rodriguez was competent.  The certification of mental competency under section 1372 was filed in the trial court on September 17, 2018.[2]  The exact date of Rodriguez's discharge from DSH does not appear in the material provided to this court.

---

[2] Despite the September 17, 2018 file-stamped date that appears on the certification of mental competency provided to this court, Rodriguez alleges that "the parties stipulated" in the trial court that the certification was filed on "September 7, 2018" (boldface omitted).  In his return, the district attorney admits Rodriguez's allegation.

On September 20, 2018, the parties submitted on the examiners' reports the question of restoration to competence. The trial court found Rodriguez's competency restored and reinstated the criminal proceedings. Rodriguez was present in court for this hearing and waived time for trial.

### 2. Second Competency Proceedings

Almost four months later, on January 10, 2019, the trial court again declared a doubt about Rodriguez's competency and suspended the proceedings. On April 18, 2019, after the parties submitted the question of competency on the examiners' reports, the trial court found Rodriguez not competent.

On May 16, 2019, the trial court ordered that Rodriguez be committed to DSH for placement in a locked psychiatric facility for care and treatment under section 1370, subdivision (a)(2). The court's subsequent written order of commitment (signed on May 31, 2019) stated the "maximum term is 2 years minus 0 days actual credit on C1898510 and TBD credits by Department of State Hospital[s] on C1650275 & C1647395" (boldface & capitalization omitted).[3] On May 31, 2019, the trial court signed an order directing DSH to provide a placement for Rodriguez "by 5:00 p.m. [on] June 14, 2019." (Boldface & underlining omitted.) Neither the date on which the court provided the section 1370 packet to DSH nor the date on which Rodriguez was admitted into a DSH facility appears in the material provided to this court.

On January 9, 2020, the medical director of Atascadero State Hospital certified that Rodriguez was competent. The Director also opined, pursuant to section 1372, subdivision (e), that Rodriguez "probably does not need placement in a psychiatric

---

[3] Effective January 1, 2019, the maximum incompetency commitment under section 1370(c)(1), was reduced from three years to two. (Stats. 2018, ch. 1008, § 2 [Senate Bill No. 1187 (2017-2018 Reg. Sess.)].) The material provided to this court does not include any calculation of commitment credits that may have been made by DSH for case Nos. C1647395 and C1650275. In addition, the parties have not provided this court the charging document in case No. C1898510. However, the trial court's order of commitment lists an additional misdemeanor battery charge (§ 243, subd. (a)).

facility in order to maintain competence to stand trial." The certification of mental competency under section 1372 was filed in the trial court on January 17, 2020.[4] The exact date of Rodriguez's discharge from DSH does not appear in the material provided to this court.

On January 24, 2020, the parties appeared before the trial court. Attorney Daniel Mayfield substituted into Rodriguez's cases as newly assigned defense counsel. Mayfield requested a continuance of a formal hearing under section 1372 on Rodriguez's restoration to competence (restoration hearing).[5] The cases were set for a restoration hearing on May 21, 2020, and an intervening court date was set for February 7, 2020.

On February 7, 2020, another intervening court date of March 13, 2020, was set in order for Mayfield to subpoena records. On March 13, 2020, the trial court released subpoenaed records to Mayfield and set another court date for April 17, 2020.

On March 17, 2020, because of Santa Clara County's COVID-19 " 'shelter in place' orders, " the Santa Clara County Superior Court suspended "all non-essential functions." The superior court did not include restoration hearings among the "essential functions" it would continue to perform during the suspension.

The parties next appeared in court on July 17, 2020. The trial court released additional subpoenaed records to Mayfield. Rodriguez's cases were set for a restoration hearing on August 24, 2020, and an intervening court date was set for August 14, 2020.

---

[4] Rodriguez alleges that the parties stipulated to a filed date of "January 9, 2020" for this second certification (boldface omitted). The district attorney admits Rodriguez's allegation.

[5] The record before this court does not include a transcript of this hearing and does not otherwise disclose which party requested the formal restoration hearing, although at oral argument petitioner indicated he believed it was counsel for Rodriguez. We note that, with respect to Rodriguez's earlier restoration proceeding, the parties submitted the question of restoration to competence on the examiners' reports. The trial court found Rodriguez's competency restored and reinstated the proceedings less than two weeks after the medical director of Atascadero State Hospital issued a certification of competency.

5

On August 14, 2020, the assigned deputy district attorney requested a continuance of the restoration hearing. As a result, the restoration hearing was reset to September 21, 2020, and an intervening court date was set for August 28, 2020.

By August 28, 2020, the trial court had not yet received certain subpoenaed records from Atascadero State Hospital. Another court date regarding the records was set for September 11, 2020. On September 8, 2020, during the call of the master criminal trial calendar, Santa Clara County Superior Court Judge Eric Geffon described the lack of available courtrooms for trials caused by the COVID-19 pandemic.

On September 10, 2020, Mayfield e-mailed the deputy district attorney and stated that he wished to continue the restoration hearing until at least September 28, 2020. The deputy district attorney responded and informed Mayfield that the trial court had "already automatically continued" the restoration hearing to November 2, 2020.

On September 11, 2020, the trial court released subpoenaed records to Mayfield and set the next court date as November 2, 2020. According to a declaration signed by Mayfield and filed in this court with Rodriguez's petition for a writ of prohibition, many of the scheduled restoration hearing dates between September 11, 2020 and March 15, 2021 were "automatically continued once the COVID-19 Pandemic struck."

On September 29, 2020, the deputy district attorney met with Judge Geffon and "expressed the importance of locating an available courtroom to hear pending mental health cases." Judge Geffon informed the deputy district attorney that the Santa Clara County Superior Court "did not presently have the resources to conduct the hearings in these cases due to the COVID-19 pandemic and the limited trial capacity and backlog of criminal jury trials that had resulted therefrom."

The scheduled November 2, 2020 hearing never occurred. Rodriguez's cases were automatically continued by the trial court to a date in December 2020, which hearing also did not occur.

According to the deputy district attorney and Mayfield, Rodriguez's restoration hearing was reset to January 25, 2021, but that hearing did not take place. The restoration hearing was subsequently reset to a date in March 2021.

C. *Rodriguez's Objection to the Restoration Hearing and Motion to Dismiss*

On March 8, 2021, Rodriguez filed an objection to "the proposed hearing on his alleged restoration to sanity under [section] 1372" and motion to dismiss the charges in case Nos. C1647395 and C1650275, pursuant to section 1385 and *People v. Carr* (2021) 59 Cal.App.5th 1136 (*Carr II*).[6] Rodriguez contended that he had been committed as incompetent in excess of the two-year commitment period allowed by section 1370(c)(1). He maintained that his incompetency commitment should be calculated from "judicial determination to judicial determination" (capitalization omitted) and, thus, his first commitment ran from May 24, 2018, through September 20, 2018 (119 days), and his second commitment ran from May 16, 2019, through the impending March 16, 2021 restoration hearing (670 days), for a total commitment of 789 days, which was more than two years (730 days).

The district attorney orally opposed Rodriguez's objection and motion at a hearing held on March 16, 2021. The district attorney argued that *Carr II* is distinguishable from the present case because Rodriguez had not yet had a restoration hearing and if, at his future hearing, Rodriguez were found to be competent, "time is tolled back to th[e] certificate of competency."[7]

---

[6] Rodriguez subsequently filed two supplements to his motion. Unlike his original motion, the cover pages of his supplements also include the case number for his misdemeanor battery case (C1988510). Additionally, in his second supplement, Rodriguez asserted that "all three matters, (at least as they exist under these two docket numbers) [*sic*] should be dismissed." Nevertheless, in his petition for a writ of prohibition to this court, Rodriguez does not address his misdemeanor case. We therefore will not consider the misdemeanor case when addressing the issues raised by Rodriguez in his petition.

[7] The district attorney did not dispute the applicability of the two-year statutory maximum (effective Jan. 1, 2019) to Rodriguez's cases.

The trial court (Judge Geffon) denied Rodriguez's objection and motion at the March 16, 2021 hearing. The court reasoned that after a certificate of restoration is issued, if a trial court disagrees with the certificate and finds the defendant has not been restored to competence, then the time "between the restoration certificate and the restoration hearing" "should be counted against the maximum term." However, if at the restoration hearing a trial court agrees with the certificate of restoration and finds the defendant has been restored to competence, then "it's fair to use the date of the restoration certificate as establishing the date on which the defendant was restored to competency." The court explained that using the date of the certificate of restoration for the purposes of counting the days of a defendant's commitment does not cede its power to ultimately decide whether the defendant has been restored to competence. Additionally, the court opined that its conclusion would not "create[] an equal protection problem."

The trial court noted its concern that, if the time between the certificate of restoration and the restoration hearing were to count in all cases (irrespective of the ultimate determination regarding the defendant's restoration to competence), a trial court "would be forced to send the case out for a restoration hearing when the [defendant's] lawyer is not ready."

After the trial court ruled, Rodriguez's counsel (Mayfield) requested a further continuance and an order to obtain some of Rodriguez's recent jail records related to his recent placement "on at least a 24-hour hold" and "suicide watch."

D. *Writ Proceedings in this Court*

On April 16, 2021, Rodriguez filed a petition for a writ of prohibition or other equitable relief to stay competency restoration proceedings (petition). He specifically requested that we "[s]tay all superior court proceedings in Case Numbers C1650275 and C1647395" and "[i]ssue a peremptory writ of prohibition directing respondent court to

8

vacate its order denying the motion to dismiss and enter an order granting the motion, or equivalent relief; or [¶] . . . [¶] [] any other relief deemed just and proper."**8**

On April 28, 2021, this court stayed all proceedings in the trial court and requested that the People (real party in interest represented by the district attorney) file a preliminary opposition to the petition. In July 2021, this court issued an order to show cause why a peremptory writ should not issue as requested by Rodriguez. In August 2021, the district attorney filed a return to the order to show cause, and Rodriguez filed a denial to the return.

In his denial, Rodriguez modifies the relief he requested in his petition, in that he asks us to "grant each of his prayers for relief, issue the writ of prohibition, and remand with directions to the superior court to reconsider the motion to dismiss." Additionally, Rodriguez objects on three grounds to the sufficiency of the district attorney's return. We analyze those objections below and then turn to the merits of Rodriguez's petition.

## II. DISCUSSION

A. *Rodriguez's Objections to the Return*

We first address Rodriguez's three procedural objections to the district attorney's return.

---

**8** In his prayer for relief, Rodriguez also asks us to take judicial notice of "all records and pleadings" in case Nos. C1647395 and C1650275. Regarding judicial notice, the California Rules of Court provide: "To obtain judicial notice by a reviewing court under Evidence Code section 459, a party must serve and file a separate motion," (Cal. Rules of Court, rule 8.252(a)(1)) which must state why the matter to be noticed is relevant, whether it was presented to the trial court, whether the trial court took judicial notice of the matter, and, if not, why the matter is subject to judicial notice under the Evidence Code. (*Id*., (2)(A)–(C).) In addition, "If the matter to be noticed is not in the record, the party must attach to the motion a copy of the matter to be noticed or an explanation of why it is not practicable to do so." (*Id*., (a)(3).) Because Rodriguez has not filed a separate motion in accordance with the relevant court rule, we decline his request for judicial notice.

9

First, Rodriguez asserts that the return is insufficient because it is unverified. However, after Rodriguez filed his denial, the district attorney submitted a verification to the return. Thus, Rodriguez's objection is moot.

Second, Rodriguez asserts insufficiency because the return "does not address analogous, recent case law"—namely, *Stiavetti v. Clendenin* (2021) 65 Cal.App.5th 691 (*Stiavetti*) and *Medina v. Superior Court* (2021) 65 Cal.App.5th 1197 (*Medina*). Rodriguez provides no precedent to support his assertion of insufficiency, and we are not persuaded that the district attorney's failure to address these recent cases renders the return itself insufficient. (See *Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545–546.) We therefore reject this challenge to the return.

Finally, Rodriguez contends that the return includes a declaration of the assigned deputy district attorney that was "not presented to the superior court at the hearing on the motion to dismiss." Under the facts here, we decide we may consider this declaration. "Ordinarily a reviewing court will not consider evidence arising after the trial court ruling, involving facts open to controversy which were not placed in issue or resolved by the trial court." (*BGJ Associates v. Superior Court* (1999) 75 Cal.App.4th 952, 958; see also *People v. Superior Court* (*Lavi*) (1993) 4 Cal.4th 1164, 1173, fn. 5; *Stevens v. Superior Court* (1999) 75 Cal.App.4th 594, 607, fn. 13.) However, in an original writ proceeding, we have discretion to consider relevant information not presented to the trial court. (See *McCarthy v. Superior Court* (1987) 191 Cal.App.3d 1023, 1030, fn. 3; see also *Bruce v. Gregory* (1967) 65 Cal.2d 666, 670–671.) The substance of the information contained in the declaration, which details case events and interactions between the district attorney and the bench officer who ruled on Rodriguez's objection to the restoration hearing and motion to dismiss, appears to have been within the knowledge of the bench officer who made the order at issue in this writ proceeding. Under these circumstances, we will exercise our discretion to consider the declaration of the deputy district attorney.

10

B.  *The Parties' Contentions*

Rodriguez argues the statutory scheme governing inquiry into a defendant's competence does not provide for tolling of the incompetency commitment period and the trial court's interpretation of section 1370 cannot be reconciled with the recent conclusions of the Court of Appeal in *Carr II*, *supra*, 59 Cal.App.5th 1136.  He further maintains that "no [restoration] hearing can be held when respondent court lacks jurisdiction after the commitment period lapses under Penal Code section 1370, subdivision (c)(1)."  In addition, he asserts that tolling the commitment period based on a certificate of restoration violates separation of powers and the non-delegation doctrine.  Finally, he maintains his fundamental right to liberty is implicated by his incompetency commitment, and tolling the commitment period violates his rights to due process and equal protection and against cruel and unusual punishment.[9]

In his return, the district attorney counters with multiple contentions.  He asserts, inter alia, that the trial court properly denied Rodriguez's motion because he is presumed competent as of January 9, 2020 (i.e., the date of the latest Certification of Mental Competency) and "[a]bsent a judicial finding overcoming this presumption, the present matters are not subject to dismissal for violation of the maximum two-year commitment period for incompetency."  The district attorney argues further that Rodriguez's commitment has not exceeded two years because the commitment period is properly calculated as terminating upon the filing of a certificate of restoration.

---

[9] We note that, although Rodriguez acknowledges "the COVID-19 pandemic impacted the timing" of the impending restoration hearing, his current claims regarding the duration of the commitment period and lack of jurisdiction to hold a restoration hearing after the commitment period lapses do not turn on the particular reasons for failing to hold such a hearing, including the COVID-19 pandemic.  Rather, Rodriguez makes the general claim that "the competency statutes [do not] permit continuances past time limits" and "the competency commitment period must be treated as mandatory, not discretionary."  Rodriguez defines the "commitment period" solely by reference to the dates of the trial court's orders on competence.

11

C. *Standard of Review and Canons of Statutory Interpretation*

Neither party has addressed in briefing the standard for our review of the trial court's ruling on Rodriguez's objection to a restoration hearing and motion to dismiss under section 1385. However, at oral argument before this court, the parties agreed that we should exercise de novo review in this case. We concur.

Generally, when reviewing a trial court's decision to grant or deny a motion to dismiss, we apply the deferential abuse of discretion standard and review the court's factual findings for substantial evidence. (See *People v. Carmony* (2004) 33 Cal.4th 367, 374; *People v. Memro* (1995) 11 Cal.4th 786, 835–836.) In doing so, we must determine "whether the ruling in question 'falls outside the bounds of reason' under the applicable law and the relevant facts." (*People v. Williams* (1998) 17 Cal.4th 148, 162.)

On the other hand, interpretation and application of a statutory scheme to undisputed facts is a question of law subject to de novo review. (See *People v. Camarillo* (2000) 84 Cal.App.4th 1386, 1389; *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799–801; *Moore v. Superior Court of Riverside County* (2020) 58 Cal.App.5th 561, 573.)

" ' " 'When we interpret a statute, "[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." [Citation.] "Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' " ' "

12

(*Smith v. LoanMe, Inc.* (2021) 11 Cal.5th 183, 190.) "A court 'may not rewrite a statute, either by inserting or omitting language, to make it conform to a presumed intent that is not expressed.' " (*Kaanaana v. Barrett Business Services, Inc.* (2021) 11 Cal.5th 158, 171.)

Because the issues presented in this case are entirely questions of law involving statutory interpretation and constitutional requirements, our review is de novo. (See *Stiavetti*, *supra*, 65 Cal.App.5th at p. 706; see also *Baqleh v. Superior Court* (2002) 100 Cal.App.4th 478, 485; *People v. Superior Court* (*Sokolich*) (2016) 248 Cal.App.4th 434, 441.)

D. *Relevant Competency Statutes and Legal Principles*

"A criminal defendant cannot be tried if he or she is not competent to understand the nature of the charges or the proceedings, or to rationally assist counsel in the conduct of a defense. (§ 1367, subd. (a).) A defendant who is not competent to stand trial may be involuntarily committed for the purpose of assessing whether he or she is likely to gain competence and, if so, for treatment to that end." (*Jackson v. Superior Court* (2017) 4 Cal.5th 96, 100–101 (*Jackson*).)

"[T]he Legislature in 1974 amended the procedures for determining competence. (See Stats. 1974, ch. 1511, § 6, p. 3318.) These amendments provided that a trial court, the defendant's attorney, or the defendant can declare a doubt as to the defendant's competence to stand trial, at which point the trial court must suspend proceedings and hold a hearing to determine the defendant's competence. (§§ 1368, 1369.)" (*Jackson*, *supra*, 4 Cal.5th at p. 101.)

At the section 1369 hearing, the defendant is presumed to be mentally competent unless he is proved by a preponderance of the evidence otherwise. (§ 1369; *People v. Rells* (2000) 22 Cal.4th 860, 862 (*Rells*).) If the defendant is determined at the section 1369 hearing to be competent, the trial court orders criminal proceedings resumed. (§ 1370, subd. (a)(1)(A).) If the defendant is found to be mentally incompetent, criminal

13

proceedings "shall be suspended until the person becomes mentally competent." (*Id.*, subd. (a)(1)(B).)

If it finds the defendant incompetent to stand trial, the trial court may order the defendant's commitment to an appropriate treatment facility. (See § 1370, subd. (a)(1)(B); *Jackson*, *supra*, 4 Cal.5th at p. 101.) If the court determines that the defendant should be committed to a DSH or other treatment facility, the court issues a commitment order and provides it and other documents to the treatment facility prior to the defendant's admission. (See § 1370, subds. (a)(1)(B), (a)(3)(A)–(I), (a)(5).)

The procedures that follow a defendant's admission to the treatment facility depend on whether, in the judgment of the treatment facility, the defendant will timely be restored to competence. Generally speaking, the statutory purposes of the competency statutes "are to make sure (1) a mentally incompetent criminal defendant is not tried, and (2) the mentally incompetent defendant is confined for incompetency only for a period reasonable for his or her competence to be restored." (*In re Taitano* (2017) 13 Cal.App.5th 233, 252 (*Taitano*).)

"Within 90 days of commitment, the treatment facility must report to the trial court on the defendant's likely progress in regaining competence. ([§ 1370], subd. (b)(1)[10].)" (*Jackson*, *supra*, 4 Cal.5th at p. 101.) If the defendant has not recovered mental competence, but the report discloses a substantial likelihood that the defendant will regain mental competence in the foreseeable future, the defendant remains in treatment. (§ 1370, subd. (b)(1).) Thereafter, at six-month intervals or until the defendant becomes mentally competent, the treatment facility must report to the court regarding the confined defendant's progress toward recovery of mental competence.

---

[10] The Legislature recently amended section 1370, subdivision (b)(1), but the amendment does not materially alter the reporting requirement as stated here. (See Stats. 2021, ch. 143, § 343.)

(*Ibid*.) "If the defendant regains competence, criminal proceedings may resume." (*Jackson*, at p. 101, citing § 1370, subd (a)(1)(A).)[11]

"If at any point the treatment facility concludes there is *no* substantial likelihood that the defendant will regain competence, the defendant is returned to the trial court. ([§ 1370], subd. (b)(1)(A).)  Otherwise, the defendant may continue to be committed for up to [two] years or for a period equal to the longest prison term possible for the most serious charge facing the defendant, whichever is shorter.  (*Id*., subd. (c)(1).)  At that point, if the defendant has still not regained competence, the defendant is returned to the trial court.  (*Ibid*.)"  (*Jackson*, *supra*, 4 Cal.5th at p. 101, italics added.)

When the defendant is at the treatment facility, if a statutorily designated health official determines during the commitment that the defendant has regained mental competence, the official must "immediately certify that fact to the court by filing a certificate of restoration with the court," and "the date of filing shall be the date on the return receipt."  (§ 1372, subd. (a)(1).)  Under this circumstance, a defendant who is confined in a DSH facility shall be delivered to the sheriff of the county from which the patient was committed and returned to the committing court no later than 10 days following the filing of a certificate of restoration.  (*Id*., subd. (a)(3); see also § 1370, subd. (a)(1)(C).)

Section 1372, which applies when the defendant has been certified as restored by the designated mental health official, does not expressly require that the court conduct a hearing on whether the defendant has been restored to competence.  However, courts have reasoned that "the numerous references in that statute to a hearing indicate a legislative intention that such a hearing be afforded."  (*People v. Murrell* (1987) 196 Cal.App.3d 822, 826.)

---

[11] In addition, under section 1370, subdivision (a)(1)(G), a second competency hearing during the commitment period is authorized (without issuance of a certificate of restoration) if there is substantial evidence of a change in the defendant's condition.

In the absence of any particulars in section 1372 about the hearing on the restoration of competence, the California Supreme Court has looked to the procedures set out in section 1369, which applies to the original determination of competency, to determine procedures applicable to section 1372.  (*Rells*, *supra*, 22 Cal.4th at pp. 867–868.)  For example, based on the statutory presumption described in section 1369 our Supreme Court has concluded that, with respect to section 1372, at "a hearing on a defendant's recovery of mental competence . . . the presumption [is] that the defendant is mentally competent unless he is proved by a preponderance of the evidence to be otherwise."  (*Rells*, at p. 869.)

In *Rells*, the Supreme Court rejected a due process challenge to this scheme.  It relied in particular on the "legal force and effect" (*Rells*, *supra*, 22 Cal.4th at p. 868) of the mental health official's certification of restoration to competence and observed that "[t]he Fourteenth Amendment's due process clause in fact permits the presumption that the defendant is mentally competent unless he is proved by a preponderance of the evidence to be otherwise."  (*Id*. at p. 869.)

At a section 1372 restoration hearing, the trial court decides whether to approve the certificate of restoration to competence.  If the court approves the certification, the court must order that criminal proceedings resume and must conduct a hearing on whether the defendant may be released on bail or on the defendant's own recognizance.  (See § 1372, subds. (c)–(e)[12]; *Taitano*, *supra*, 13 Cal.App.5th at p. 242.)  If neither party

---

[12] Section 1372, subdivision (c), provides:  "When a defendant is returned to court with a certification that competence has been regained, the court shall notify either the community program director, the county mental health director, or the regional center director and the Director of Developmental Services, as appropriate, of the date of any hearing on the defendant's competence and whether or not the defendant was found by the court to have recovered competence."  (§ 1372, subd. (c).)  The restoration hearing afforded by this subdivision was first enacted in 1980.  (Stats. 1980, ch. 547, § 14, p. 1517.)  Prior to the 1980 amendment, section 1372 did not include any reference to a

16

requests an evidentiary hearing on whether the defendant has been restored to competence, the trial court can summarily determine that the defendant's competency has been restored. (See *Rells*, *supra*, 22 Cal.4th at p. 868; *People v. Mixon* (1990) 225 Cal.App.3d 1471, 1480–1482.)

The maximum period of commitment under section 1370 is "two years from the date of commitment." (§ 1370(c)(1).) At the time the trial court ruled on Rodriguez's objection and motion to dismiss, section 1370(c)(1) provided: "At the end of two years from the date of commitment or a period of commitment equal to the maximum term of imprisonment provided by law for the most serious offense charged in the information, indictment, or misdemeanor complaint, or the maximum term of imprisonment provided by law for a violation of probation or mandatory supervision, whichever is shorter, but no later than 90 days prior to the expiration of the defendant's term of commitment, a defendant who has not recovered mental competence shall be returned to the committing

---

court determination on the issue of recovered competence. (See Stats. 1974, ch. 1511, § 8, p. 3320.)

Section 1372, subdivision (d), provides: "If the committing court approves the certificate of restoration to competence as to a person in custody, the court shall hold a hearing to determine whether the person is entitled to be admitted to bail or released on own recognizance status pending conclusion of the proceedings. If the superior court approves the certificate of restoration to competence regarding a person on outpatient status, unless it appears that the person has refused to come to court, that person shall remain released either on own recognizance status, or, in the case of a developmentally disabled person, either on the defendant's promise or on the promise of a responsible adult to secure the person's appearance in court for further proceedings. If the person has refused to come to court, the court shall set bail and may place the person in custody until bail is posted." (§ 1372, subd. (d).)

Further, under section 1372, subdivision (e), if the court has approved a certificate of restoration to competence but has not admitted the defendant to bail or released him or her pursuant to subdivision (d), it may order the defendant placed in a secure treatment facility upon a recommendation from a designated health official that defendant "will need continued treatment in a hospital or treatment facility in order to maintain competence to stand trial" or "placing the person in a jail environment would create a substantial risk that the person would again become incompetent to stand trial before criminal proceedings could be resumed." (§ 1372, subd. (e).)

17

court. The court shall notify the community program director or a designee of the return and of any resulting court orders." (Stats. 2018, ch. 1008, § 2 [former § 1370(c)(1)].)

The current version of section 1370(c)(1) further provides that "custody of the defendant shall be transferred without delay to the committing county and shall remain with the county until further order of the court" and "[t]he court shall not order the defendant returned to the custody of the State Department of State Hospitals under the same commitment." (Stats. 2021, ch. 143, §§ 343 [current § 1370(c)(1)], 424 [effective July 27, 2021].)

"The purpose of section 1370 is to provide a defendant the maximum term possible, not to exceed [two] years or the maximum period of imprisonment for a charged crime such as a misdemeanor offense . . . to restore his or her competency." (*People v. G.H.* (2014) 230 Cal.App.4th 1548, 1559 (*G.H.*); see also *In re Albert C.* (2017) 3 Cal.5th 483, 491 ["A defendant making progress toward attaining competency may be committed . . . for [two] years or the length of the maximum term of imprisonment for the most serious charged offense, whichever is shorter."].) The two-year commitment period "applies to the total period *actually spent* in commitment at a mental institution." (*G.H.*, at p. 1558, italics added.) Further, the two-year period is measured by "the aggregate of all commitments on the same charges." (*In re Polk* (1999) 71 Cal.App.4th 1230, 1238.)

"When a defendant is returned to the trial court [without a certification of restoration to competence]—either because there is no substantial likelihood that the defendant will regain competence or because the defendant has been committed for the maximum statutory period—the trial court must order the public guardian to initiate [Lanterman–Petris–Short Act (LPS Act)] conservatorship proceedings if the defendant is 'gravely disabled' within the meaning of the LPS Act. (§ 1370, subd. (c)(2).[13])" (*Jackson*, *supra*, 4 Cal.5th at p. 102.) The competency statutes do not authorize a new

---

[13] The Legislature recently amended section 1370, subdivision (c)(2), by renumbering it as subdivision (c)(3). (See Stats. 2021, ch. 143, § 343.)

18

competency hearing at this point in the process.  (*People v. Quiroz* (2016) 244 Cal.App.4th 1371, 1380.)

"If the defendant is not gravely disabled, the defendant must be released [citation], and the trial court may dismiss the action in the interest of justice pursuant to section 1385 (§ 1370, subd. (d); [citation]).  Such a dismissal is 'without prejudice to the initiation of any proceedings that may be appropriate' under the LPS Act.  (§ 1370, subd. (e).)"  (*Jackson*, *supra*, 4 Cal.5th at p. 102; see also *People v. Waterman* (1986) 42 Cal.3d 565, 568 & fn. 1 (*Waterman*); *County of Los Angeles v. Superior Court* (2013) 222 Cal.App.4th 434, 442–443.)

E.  *Analysis*

Rodriguez contends that he has been committed as incompetent for more than the two-year statutory maximum period and, thus, the court has "no jurisdiction for a restoration of competency hearing."  He maintains that the "appropriate jurisdictional question" here is whether a court can hold a restoration of competency hearing "more than two years after the commitment order was issued."  He claims the restoration hearing can no longer occur because such a hearing "must be authorized by 'special' jurisdiction under section 1372, which can only occur within the commitment period authorized by [section] 1370, subdivision (c)(1)."  He maintains the competency statutes do not allow a court to hold a competency hearing after a defendant has completed the maximum commitment term.

We begin our analysis of Rodriguez's contention by reiterating what section 1372 says about a court's authority to hold a restoration hearing:  "When a defendant is returned to court with a certification that competence has been regained," the court may hold a "hearing on the defendant's competence and whether or not the defendant was found by the court to have recovered competence."  (§ 1372, subd. (c); *Medina*, *supra*, 65 Cal.App.5th at p. 1207.)  Under the plain text of the statute, a court has the statutory authority to hold a restoration hearing so long as a designated official certifies that the

19

defendant has regained mental competence. Section 1372 does not explicitly state any time frame within which the restoration hearing must be held and does not reference section 1370(c)(1)'s two-year maximum for an incompetency commitment.

In this matter, the following events all occurred by late January 2020, well before Rodriguez's aggregate commitment—by any measure—had reached the two-year maximum under section 1370(c)(1): twice (1) a certificate of mental competency was filed in the trial court, (2) Rodriguez was returned to Santa Clara County from his commitment at DSH, and (3) Rodriguez appeared before the trial court. With respect to the first certification of mental competency, the trial court had approved the certificate of restoration. Although the parties agree on the start dates for Rodriguez's two commitments,[14] they disagree whether the time Rodriguez has spent in the trial court since his second return from DSH in January 2020 should count toward section 1370(c)(1)'s two-year maximum commitment period.

Rodriguez contends that his incompetency commitment continues until the trial court approves the certification of restoration under section 1372. That is, Rodriguez asserts his first commitment ended when the court approved the certification on September 20, 2018, and his second commitment continues to this day. By contrast, the district attorney maintains that each of Rodriguez's commitments ended on the date the certification of restoration was filed with the trial court.

Rodriguez's principal authority for his contention that he has exceeded the two-year maximum commitment period is the recent decision of Division Three of the First District Court of Appeal in *Carr II*, *supra*, 59 Cal.App.5th 1136. There, the Court of Appeal addressed an argument by the People that "a defendant who has been certified by

---

[14] Because the district attorney apparently concedes that Rodriguez's "commitment" under section 1370(c)(1) began on the date of the trial court's order of commitment, we assume without deciding that the beginning of each of Rodriguez's commitments is determined by the two commitment order dates (i.e., May 24, 2018, and May 16, 2019).

state authorities to be competent and returned to court pursuant to section 1372 'is no longer "committed" for purposes of calculating the maximum period' of commitment." (*Id*. at p. 1144.) As Rodriguez's claim of trial court error depends almost entirely upon *Carr II*, we describe both the procedural background of the case and its legal analysis.

In *Carr II*, the trial court had committed the defendant to a treatment facility as incompetent to stand trial under section 1370.1, which applies to any incompetent defendant who has "a developmental disability" (§§ 1367, subd. (b), 1370.1, subd. (a)(1)(B)). Several months later, a DSH psychiatrist certified the defendant was competent. The defendant filed a petition for writ of mandate in the Court of Appeal challenging the certification of competency. (*Carr II*, *supra*, 59 Cal.App.5th at pp. 1140–1141.) The Court of Appeal denied the petition. (*Carr v. Superior Court* (2017) 11 Cal.App.5th 264, 267.) The trial court then held a hearing on whether the defendant had been restored to competence and found the defendant to be incompetent. (*Carr II*, at p. 1141.)

After finding the defendant, who, as described above, was subject to a developmental disability, as incompetent, the trial court again committed him to a treatment facility. A few months later, the defendant moved for release on the ground he had reached the maximum commitment authorized by law. The trial court denied the motion concluding that the certification of competency had "tolled" the defendant's commitment period. (*Carr II*, *supra*, 59 Cal.App.5th at p. 1141.) The defendant then filed a petition for writ of habeas corpus in the trial court, again asserting that he had exceeded the maximum commitment period set forth in section 1370.1, subdivision (c)(1).[15] (*Carr II*, at pp. 1141–1142.) The trial court rejected the People's contention that

---

[15] Current section 1370.1, subdivision (c)(1)(A) is similar, but not identical to section 1370(c)(1). Section 1370.1, subdivision (c)(1)(A) provides in full: "At the end of two years from the date of commitment or a period of commitment equal to the maximum term of imprisonment provided by law for the most serious offense charged in

the "certification of competency terminated [the defendant's] commitment and thereby tolled" the maximum commitment period. (*Id*. at p. 1142.) The court ruled that the period between the certification of the defendant's competency and its subsequent determination that the defendant remained incompetent " 'did indeed count as part of the "commitment" for purposes of calculating [the defendant's] maximum commitment time.' " (*Ibid*.) Additionally, the trial court ordered that the defendant remain confined in local custody pending investigation of alternative civil commitment proceedings. (*Ibid*.)

On appeal, the Court of Appeal affirmed the trial court, concluding that the "relevant statutes do not explicitly state the point at which an incompetency commitment ends, but the statutory language and the case law . . . clearly indicate that the certificate of competency serves only to initiate proceedings by which the court will hear and decide the question of the defendant's competency." (*Carr II*, *supra*, 59 Cal.App.5th at p. 1144.) Further, the appellate court indicated its agreement with the trial court's conclusion "that the filing of a certificate of competency did not terminate the defendant's commitment so as to prevent the three-year maximum commitment term from accruing." (*Id*. at p. 1140; see also *id*. at p. 1147; *Medina*, *supra*, 65 Cal.App.5th at p. 1207, citing *Carr II*, at p. 1143 ["The filing of the certificate of restoration does not establish competence but initiates court proceedings to determine whether the defendant's competency has been restored."].)

---

the information, indictment, or misdemeanor complaint, or the maximum term of imprisonment provided by law for a violation of probation or mandatory supervision, whichever is shorter, a defendant who has not become mentally competent shall be returned to the committing court." (§ 1370.1, subds. (c)(1)(A).) Further, section 1370.1 is like section 1370 in that "[a] defendant who has not regained competency within the maximum period must be returned to court and either released or recommitted under alternative commitment procedures. (§ 1370.1, subds. (c)(1)(A), (c)(2)(A).)" (*Carr II*, *supra*, 59 Cal.App.5th at p. 1144; see also *Medina*, *supra*, 65 Cal.App.5th at p. 1207.)

22

We do not agree that *Carr II* requires reversal of the trial court's order. Under the facts in this case, we conclude *Carr II* is not dispositive, and we decline to adopt its reasoning. We respectfully disagree with the *Carr II* court's rejection of the significance of the certification of restoration with respect to calculation of the two-year commitment period under section 1370(c)(1). Our Supreme Court has stated that when a certificate of restoration is filed, it "has legal force and effect in and of itself" (*Rells*, *supra*, 22 Cal.4th at p. 868), and the filing of the certificate triggers a presumption of mental competency under section 1372. (See *Rells*, at pp. 867–871.) As described further below, we decide the legal force and effect of the restoration certificate for a defendant who has been treated at a commitment facility includes the fixing of the end date for calculation of the commitment treatment period under section 1370(c)(1).

The court in *Carr II* questioned the "purpose [to] be served in requiring [a] court to approve the certification as expressly contemplated in section 1372, subdivision (d)" "if the commitment terminates when a health official files a certification of competence." (*Carr II*, *supra*, 59 Cal.App.5th at p. 1145.) We respectfully disagree with *Carr II* that the section 1372, subdivision (d) language referencing court approval is dispositive. The issuance of the restoration certificate and the subsequent court hearing have distinct statutory objectives in light of the overall competency statutory scheme, and we reject the *Carr II* court's exclusive focus on the judicial determination of restoration of competency.

The incompetency scheme's overall "purpose is restoration of a specific mental state without which the criminal process cannot proceed." (*Waterman*, *supra*, 42 Cal.3d at p. 569.) More specifically, the commitment of an incompetent defendant is intended to provide treatment to "promote the defendant's speedy restoration to mental competence." (§ 1370, subd. (a)(1)(B)(i); see also *Taitano*, *supra*, 13 Cal.App.5th at p. 244.)

Rodriguez does not point to any information in the record demonstrating that he is still receiving treatment for the purpose of restoring his competence. Although a

23

defendant may, at the discretion of the court after it approves the certificate of restoration, be provided "continued treatment . . . in order to maintain competence to stand trial" (§ 1372, subd. (e)), the statute does not include a mechanism for the provision of treatment to alleviate incompetence after the certification is filed. In fact, a defendant must be "returned to the committing court no later than 10 days following the filing of a certificate of restoration." (§ 1372, subd. (a)(3)(C).)

Because Rodriguez is no longer receiving treatment to restore competence, and because he is presumed to be competent by operation of the filing of the certificate of restoration, we conclude the period when the defendant is returned to court after having been certified as competent but before the trial court makes its own determination of competency does not count toward the two-year maximum commitment period referenced in section 1370(c)(1).

We express no opinion whether a different analysis would apply if there were evidence that Rodriguez had wrongfully been denied treatment to restore competence or if he were not transported to and from the treatment facility in a timely manner. (Cf. *Medina*, *supra*, 65 Cal.App.5th at p. 1203 ["In the usual case, only days actually spent in commitment at a mental institution or treatment facility are applied to the maximum commitment period. But this case is unusual: Medina has been denied the treatment to which he is legally entitled—and the ability to accrue time toward the maximum commitment period—because the providers of services have not fulfilled their obligations."].) We recognize that, on different facts, due process considerations may compel a different result. (See *id*. at p. 1229 ["Medina has not received the treatment to which he is legally entitled, due to the actions of the RCOC, the DDS, and the DSH. . . . Under these circumstances, applying only days actually spent in treatment at a facility toward the maximum confinement period of three years would violate due process."].) There is no evidence of such failures to comply with statutory mandates here.

24

Our interpretation of section 1370(c)(1) accords with the legislative history of recent amendments to section 1370.  When section 1370(c)(1) was amended in 2018 to reduce the maximum commitment period from three years to two years, the Legislative Counsel's Digest stated that the "bill would reduce the term for *commitment to a treatment facility* when a felony was committed to the shorter of 2 years or the period of commitment equal to the maximum term of imprisonment provided by law for the most serious offense charged."  (See Stats. 2018, ch. 1008, § 2 [Senate Bill No. 1187 (2017-2018 Reg. Sess.)], Legis. Counsel's Dig., par. 2 of initial recitals, italics added.)  "Although the Legislative Counsel's summaries are not binding [citation], they are entitled to great weight.  [Citation.]  'It is reasonable to presume that the Legislature amended those sections with the intent and meaning expressed in the Legislative Counsel's digest.' "  (*Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1170.)  The Legislative Counsel's language supports our conclusion that when the Legislature reduced the commitment period to two years, it intended the two-year period to cover only the time the defendant actually receives treatment to restore his or her competence, not to the entire period before the trial court's approval of the certification of restoration to competence.

Our decision that Rodriguez's commitment period under section 1370(c)(1) did not continue to run after the certification of restoration to competence was filed also accords with conclusions reached by other courts that have discussed the commitment period in other contexts.  A number of courts have concluded that the period *before* a defendant is committed for treatment for restoration of competency should not count toward the maximum confinement period for restoration of competency.  For example, in *G.H.*, *supra*, 230 Cal.App.4th 1548, the Court of Appeal stated:  "The Legislature enacted section 1370 with the purpose of providing treatment to mentally incompetent persons in order to restore their competency, not as a form of punishment.  As such, where a defendant is charged with crimes wherein the maximum term of confinement exceeds the

three-year period of confinement, a defendant is not entitled to have his or her precommitment credits deducted from his or her maximum term of confinement." (*Id*. at p. 1559.) Additionally, in *People v. Reynolds* (2011) 196 Cal.App.4th 801, the Court of Appeal concluded that, "[i]n determining whether defendant's previous confinement exceeded the maximum three-year period, the [trial] court correctly disregarded defendant's precommitment custody credits, and there was no violation of defendant's equal protection rights in doing so." (*Id*. at p. 809.) These decisions rely on the distinction between commitment for treatment to restore a defendant to competence and other custodial periods related to the criminal offense. They suggest that a defendant's days in custody in which he or she is not being treated for restoration to competence do not count toward the maximum commitment period. (See, e.g., *id*. at p. 806 ["A defendant who, as a result of a mental disorder, is adjudged not competent to stand trial on a felony charge may be committed *to a state hospital* for no more than three years." (Italics added.)].)

We also reject Rodriguez's contentions that terminating the commitment period when the certification of restoration is filed violates the separation of powers, his constitutional rights to due process and equal protection, or the prohibition against cruel and unusual punishment.

"A core function of the Legislature is to make statutory law, which includes weighing competing interests and determining social policy. A core function of the judiciary is to resolve specific controversies between parties. . . . Separation of powers principles compel the courts to carry out the legislative purpose of statutes . . . [and] also constrain legislative influence over judicial proceedings." (*Perez v. Roe 1* (2006) 146 Cal.App.4th 171, 177.) Moreover, " '[t]he power of the legislature to regulate criminal and civil proceedings and appeals is undisputed.' " (*Briggs v. Brown* (2017) 3 Cal.5th 808, 846.) "[C]ompetency proceedings are civil in nature and collateral to the

determination of defendant's guilt and punishment." (*Centeno v. Superior Court* (2004) 117 Cal.App.4th 30, 43.)

We discern no separation of powers violation under our interpretation of sections 1370(c)(1) and 1372 because the two relevant actors—the designated health official and the trial court—each rightfully exercise distinct powers provided to them by the Legislature under the statutes. The former certifies restoration to competence and the latter decides whether to approve the certificate and resume the criminal prosecution. That the calculation of the statutory commitment period rests on the action of an official in the executive branch does not invade the province of the judiciary to decide the ultimate question of competency and resumption of prosecution under section 1372.

As one Court of Appeal stated when rejecting the People's argument that the trial court could afford a competency hearing at a stage when the statute did not explicitly provide for one, "the availability of a competence hearing in this context turns on a balancing of important considerations: the right of a defendant *not to remain in a treatment facility longer than the statutory maximum*; the right of the defendant not to be tried if incompetent; the interest in prosecuting a competent individual for charged crimes; the state interest in public safety; and the appropriate division of responsibility between the treatment facility and the court, among others." (*Taitano*, *supra*, 13 Cal.App.5th at p. 256, italics added.) The certificate of restoration to competence by the designated health official and prompt return to the trial court vindicates the defendant's right not to remain longer than two years in the treatment facility. The judicial determination of restoration of competency ensures that the defendant is not tried if incompetent. We perceive no constitutional violation in this statutory scheme.

As for Rodriguez's due process argument, because he was certified as competent, is no longer receiving treatment to restore competence, and a contested hearing on the competency issue is required only upon a request of one or both of the parties, his custodial commitment has transmuted. He is presumed competent, and the burden is on

the defense (if either the defendant or defense counsel chooses to challenge a defendant's restoration to competence) to prove he is incompetent. Given that the certification of competency in this case was filed well before the two-year period had run, Rodriguez is not being "held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain [competence] in the foreseeable future." (*Jackson v. Indiana* (1972) 406 U.S. 715, 738.) The determination that he has regained competency was made in January 2020. The time he has spent in custody since January 2020 will be considered as part of his custody credits toward any eventual sentence (if he is convicted), but it does not count toward the two-year commitment maximum under section 1370(c)(1). (See § 1375.5.)

Similarly, the constitutional proscription against cruel and/or unusual punishment is not violated because Rodriguez has not been and will not be held indefinitely due to incompetency and without any treatment. (Cf. *People v. Feagley* (1975) 14 Cal.3d 338, 359, 376.) He has received treatment to restore his competency and will receive additional treatment in the future—up to the two-year maximum—if he now proves he is incompetent.

Finally, our conclusion that the commitment period ended with the filing of the certification in this case (and a court determination under section 1372 can go forward) does not violate Rodriguez's equal protection rights because a defendant like him, who has been certified as having regained mental competence by a designated official, is not similarly situated to a defendant who has not been so certified before attaining the two-year maximum prescribed by section 1370(c)(1). (See *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253–254; *People v. Guzman* (2005) 35 Cal.4th 577, 591–592.)

### III. DISPOSITION

The petition for writ of prohibition or other equitable relief is denied. This court's April 28, 2021 stay order is vacated. This opinion is made final as to this court seven days from the date of filing. (See Cal. Rules of Court, rule 8.490(b)(2)(A).)

_____
Danner, J.

WE CONCUR:


_____
Greenwood, P.J.


_____
Grover, J.

**H049016**
*Rodriguez v. Superior Court*

Trial Court:    County of Santa Clara

Trial Judge:    Hon. Eric S. Geffon

Counsel:    Brian C. McComas, by appointment of the Santa Clara County
            Independent Defense Office, for Petitioner.

            Jeffrey F. Rosen, District Attorney, Crystal Tindell Seiler, Barbara A.
            Cathcart, Supervising District Attorneys, for Real Party in Interest.

**H049016**
*Rodriguez v. Superior Court*