Filed 8/23/24  In re H.M. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re H.M., a Person Coming Under the Juvenile Court Law. | B334832 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 22LJJP00468A) |
| Plaintiff and Respondent, | |
| v. | |
| MELISSA M., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of the County of Los Angeles, Donald A. Buddle, Jr., Judge.  Affirmed.

Akila A. Shenoy, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

_____

**INTRODUCTION**

H.M. (born 2022) was declared a dependent of the court and removed from his mother, Melissa M. (mother).[1]  After mother failed to comply with a family reunification plan, the juvenile court terminated reunification services and set a permanency planning hearing.  The day of the hearing, mother filed a petition under Welfare and Institutions Code, section 388.[2]  She asserted a schizophrenia diagnosis made after a recent arrest for willful child cruelty, along with the initiation of treatment, constituted a change in circumstances warranting reinstatement of reunification services.  The juvenile court summarily denied her petition, and it terminated her parental rights.  Mother appeals from the orders denying her section 388 petition and terminating her parental rights.  We affirm.

---

[1] Mother also appealed from the detention, jurisdiction, and disposition orders. (No. B327640, Apr. 7, 2023.)  Her counsel filed a brief pursuant to *In re Phoenix H.* (2009) 47 Cal.4th 835, notifying us: (1) counsel was unable to identify any arguable issues after reviewing the record; and (2) mother was notified she could personally submit any contentions she believed we should consider, and the appeal would be dismissed if she failed to identify any arguable issues. (No. B327640, Dec. 1, 2023.)  Mother did not provide anything in writing setting forth her contentions, and we dismissed the appeal as abandoned.  (No. B327640, Jan. 31, 2024.)

[2] Unless otherwise specified, statutory references in this opinion are to the Welfare and Institutions Code.

2

# DISCUSSION

## A.    Background

As the parties are familiar with the facts and procedural history of the case, we do not restate all the details here. Additional facts are set forth in our analysis, *infra.*

### 1.    *Detention, Jurisdiction, and Disposition*

Mother had an extensive prior referral and case history with the Los Angeles County Department of Children and Family Services (DCFS), which included removal of her older children in 2014.

Son came to DCFS's attention shortly after he was born in mid-2022.  Multiple referrals expressed concern for son's well-being due to conditions caused by mother's methamphetamine use.  DCFS filed a petition under section 300, subdivision (b), which it later amended.  In November 2022, son was detained, removed from mother, and placed with foster parents.

At the adjudication and disposition hearing, the juvenile court found true allegations that mother's methamphetamine use interfered with her providing regular care and supervision of son, and her substance abuse endangered son and placed him at a risk of serious physical harm, damage, and danger.  Son was living in "filthy, unsanitary, and hazardous" conditions, and mother endangered him by failing to make safe and appropriate childcare arrangements for him.  For example, mother left son on an alleged father's couch and departed without telling him he was responsible for caring for son for a week.  Similarly, mother left son with son's adult sister (sister) for months but refused to sign forms so son could be seen by a doctor, and consequently, son had

3

not seen a doctor since his birth.  Son was declared a dependent of the court, and he remained with the foster parents.

Mother's case plan required her to participate in a full drug and alcohol program with weekly testing, parenting classes, and individual counseling "to address substance abuse, proactive parenting, [and] mental health."  DCFS and mother agreed on two-hour, monitored visits twice weekly.

2.     *Termination of Reunification Services and the Section 388 Petition*

In August 2023, the juvenile court terminated reunification services, finding by clear and convincing evidence that reasonable services had been provided or offered to mother, she failed to participate regularly and make substantive progress in the case plan, and there was no substantial probability of returning son to mother by the 12-month date.[3]  The court found mother "is not visiting [son] or participating in her services,"  and "[her] compliance toward . . . mitigating the causes [ ] ha[s] been

---

[3]     When a child is removed, reunification services must be ordered for six months from the dispositional hearing, but no longer than 12 months from the time the child entered foster care.  (*F.K. v. Superior Court* (2024) 100 Cal.App.5th 928, 934, citing § 361.5, subd. (a)(1)(B).)  When there is noncompliance with a court-ordered treatment plan, termination of reunification services at the six-month review hearing is discretionary.  (*Id.* at pp. 934–935.)  If "the court finds by clear and convincing evidence that the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan, the court may schedule a hearing pursuant to Section 366.26 [to terminate parental rights] within 120 days."  (*Id.* at p. 935, quoting § 366.21, subd. (e)(3), italics omitted.)

4

nonexistent." A section 366.26 permanency planning hearing[4] was set for early December.

On the day of the hearing, mother filed a section 388 petition.[5] Mother asked the court to vacate the permanency planning hearing, reinstate reunification services, and implement an "appropriate mental health component in her case plan." She contended a criminal court deemed her not competent to stand trial on a child abuse charge[6] approximately two months earlier pursuant to Penal Code, section 1370.01,[7] due to a schizophrenia

---

[4] The purpose of a section 366.26 hearing is to select a permanent plan for the child after reunification services have terminated. (*In re D.M.* (2021) 71 Cal.App.5th 261, 268; see also § 366.26, subd. (b)(1).) At the hearing, the court may order one of three alternatives (adoption, guardianship or long-term foster care), and if the child is adoptable, there is a strong preference for adoption over the alternative permanency plans. (*Ibid.*)

[5] Section 388 provides, in relevant part, "(a) Any parent . . . may, upon grounds of change of circumstance . . . , petition the court . . . for a hearing to change, modify, or set aside any order of court previously made . . . . The petition shall . . . set forth in concise language any change of circumstance[s] . . . which are alleged to require the change of order . . . . [¶] . . . [and] (c) If it appears that the best interests of the child may be promoted by the proposed change of order, . . ., the court shall order that a hearing be held and shall give prior notice . . . ."

[6] In September 2023, mother was arrested and charged with misdemeanor willful child cruelty. The record does not provide all the details of this charge. She remained incarcerated until mid-October 2023.

[7] Penal Code, section 1370.01(a)(1)(B) provides that if a defendant is mentally incompetent, trial is suspended until they are competent. "'[M]entally incompetent,' . . . is defined to mean that, 'as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel

5

diagnosis. She contended the schizophrenia made her unable to comply with her case plan, and she was now enrolled in a diversion program and "receiving adequate treatment." The juvenile court continued the permanency planning hearing and set a hearing on whether an evidentiary hearing would proceed on the section 388 request.

At the hearing in January 2024, the juvenile court denied the section 388 petition, finding "mother's progress is recent," and her "circumstances are not changed. They are changing at best. And it's not in the best interest of the minor to set the evidentiary hearing." At a subsequent hearing, the court terminated mother's parental rights, found adoption to be in son's best interests, and approved a permanent plan of adoption. Mother appealed.

Mother contends her section 388 petition was erroneously denied because she made a prima facie showing of (1) a change in circumstances; and (2) reunification services would be in son's best interests, and therefore, she was entitled to a full evidentiary hearing. She also contends the court erroneously relied on statements made by sister. Mother asks us to reverse the orders denying her section 388 petition and terminating her parental rights.[8] We are unpersuaded by mother's contentions.

---

in the conduct of a defense in a rational manner.' ([Pen. Code,] § 1367, subd. (a).)" (*In re Taitano (*2017) 13 Cal.App.5th 233, 239–240.)

[8]     Mother's challenge to the latter order is based solely on her contention that her section 388 petition was wrongly denied. She offers no other grounds for reversing the order. (See § 366.26, subd. (c)(1)(A), (B).)

**B.     Governing Principles and Standard of Review**

Pursuant to section 388, a parent may petition the juvenile court for modification of any previous order based upon changed circumstances or new evidence.  (*In re Alayah J.* (2017) 9 Cal.App.5th 469, 478 (*Alayah J.*).)  A parent may seek relief under section 388 even after the juvenile court has terminated family reunification services.  (*Ibid.*)  "Section 388 provides an ""'escape mechanism'"" for parents facing termination of their parental rights by allowing the juvenile court to consider a legitimate change in the parent's circumstances after reunification services have been terminated." (*Ibid.*, quoting *In re Marilyn H.* (1993) 5 Cal.4th 295, 309.)  "This procedural mechanism, viewed in the context of the dependency scheme as a whole, provides the parent due process while accommodating the child's right to stability and permanency."  (*Ibid.*)  "After reunification services have been terminated, it is presumed that continued out-of-home care is in the child's best interests."  (*Ibid.*) "Section 388 allows a parent to rebut that presumption by demonstrating changed circumstances that would warrant modification of a prior court order."  (*Ibid.*)

Rules of Court, rule 5.570 "governs the grant or denial of a hearing on a section 388 petition." (*Alayah J.*, *supra*, 9 Cal.App.5th at p. 479.)  Rule 5.570(f)[9] requires the juvenile court

---

[9]     Rule 5.570(f) states: "If all parties stipulate to the requested modification, the court may order modification without a hearing.  If there is no such stipulation and the petition has not been denied ex parte under section (d), the court must either: [¶] (1) order that a hearing on the petition be held within 30 calendar days after the petition is filed; or [¶] (2) order a hearing for the parties to argue whether an evidentiary hearing on the petition should be granted or

to either order a hearing on merits of a contested section 388 petition or order a hearing for the parties to argue whether an evidentiary hearing on the petition should be granted or denied. (*Ibid*.) Rule 5.570(d) permits summary denial of a petition on certain specified grounds, including that the petition "fails to state a change of circumstance or new evidence that may require a change of order or . . . [¶] . . . fails to demonstrate that the requested modification would promote the best interest of the dependent child." (Rule 5.570(d)(1), (2).)

"The parent seeking modification [of an order under section 388] must 'make a prima facie showing to trigger the right to proceed by way of a full hearing. [Citation.]' [Citation.] There are two parts to the prima facie showing: The parent must demonstrate (1) a genuine change of circumstances or new evidence, and that (2) revoking the previous order would be in the best interests of the [child]. [Citation.]" (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250 (*Anthony W.*).) "To make a prima facie showing under section 388, the allegations of the petition must be specific regarding the evidence to be presented and must not be conclusory. [Citation.] A section 388 petition must be liberally construed in favor of granting a hearing to consider the parent's request." (*Alayah J., supra,* 9 Cal.App.5th at p. 478.) However, a prima facie showing is not made "'if the allegations would fail to sustain a favorable decision even if they were found to be true at a hearing.'" (*In re K.L.* (2016) 248 Cal.App.4th 52, 61–62.)

At an evidentiary hearing, the juvenile court considers factors such as "the seriousness of the reason leading to the

---

denied. If the court then grants an evidentiary hearing on the petition, that hearing must be held within 30 calendar days after the petition is filed."

child's removal, the reason the problem was not resolved, the passage of time since the child's removal, the relative strength of the bonds with the child, the nature of the change of circumstance, and the reason the change was not made sooner." (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 616 (*Mickel O.*).) "In assessing the best interests of the child, 'a primary consideration . . . is the goal of assuring stability and continuity.' [Citation.]" (*Ibid.*) Importantly, "the petitioner must show *changed*, not changing circumstances. [Citation.] The change of circumstances or new evidence 'must be of such significant nature that it requires a setting aside or modification of the challenged prior order.'" (*Id.* at p. 615, original italics.) The court may consider the entire factual and procedural history of the case. (*Id.* at p. 616.)

We review the summary denial of a section 388 petition for an abuse of discretion, (*Alayah J., supra,* 9 Cal.App.5th at p. 478) and we do not disturb the decision unless the juvenile court exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination. (*In re I.B.* (2020) 53 Cal.App.5th 133, 153.)

## C.     Analysis

### 1.     *Changed Circumstances*

The juvenile court found mother's schizophrenia diagnosis and recent participation in services did not constitute a change of circumstances warranting reinstitution of reunification services on the eve of the permanency planning hearing. We agree.

To establish her schizophrenia diagnosis, mother offered the reports of two criminal court-appointed medical examiners who evaluated her in September 2023. One examiner reported

mother "denied any mental health needs," declined to discuss medications, lacked capacity to make medication decisions, and if left untreated, probably would suffer serious harm to her physical or mental health.  Mother became "abruptly agitated and hostile" during the interview, shouted "verbal insults" and profanity at the examiner, and presented "paranoia, irrational agitation, labile affect and limited insight, judgment and impulse control[.]"  The other examiner reported mother minimized the child abuse allegations and exhibited symptoms of "psychosis and a mood disorder, as evidenced by her paranoid delusions and grandiose beliefs."  The examiner opined mother "is a danger to others."

Despite the seriousness of her diagnosis, mother offered no evidence regarding treatment.  Mother contended she "enrolled in a diversion program under PC 1001.36(b) which includes a qualifying factor that the 'treatment will meet the specialized mental health treatment needs of the defendant.'"  However, these statements lack any detail.  (*Anthony W., supra,* 87 Cal.App.4th at p. 250.)  "'Specific allegations describing the evidence constituting the proffered changed circumstances or new evidence' is required.  [Citation.]"  (*Ibid.* ["Successful petitions have included declarations or other attachments which demonstrate the showing the petitioner will make at a hearing of the change in circumstances or new evidence"].)

Mother offered no declarations, enrollment documentation, or treatment plan for her schizophrenia diagnosis.  Indeed, she failed to provide basic information relating to treatment, such as the names of treating psychiatrists and therapists, dates she was seen, the specific medications prescribed to her, or even her own declaration attesting to a medication schedule and her adherence to it.  As the moving party, mother bore the responsibility in the

first instance to make a prima facie showing, which she failed to do.

In response to the petition, DCFS provided evidence that mother had not been properly treating her schizophrenia since diagnosis. DCFS's attempt to verify her treatment revealed that mother enrolled in a mental health program in October 2023, but then left in mid-December to enter a drug treatment program elsewhere. Consequently, mother received no mental health treatment between mid-December and the first week of January 2024. Although her case manager reported mother had been "prescribed medication" and was seen by a psychiatrist and therapist, mother did not sign a release authorizing the program provider to disclose any verifying information or details to DCFS. A few weeks before the hearing on mother's section 388 petition, mother repeatedly denied being diagnosed with schizophrenia. (See *In re A.F.* (2016) 3 Cal.App.5th 283, 293 ["'[D]enial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision'"].)

Given mother's failure to describe any evidence that her schizophrenia diagnosis was being managed successfully, the juvenile court did not abuse its discretion in determining she had not made a prima facie showing of changed circumstances sufficient to justify a reinstatement of reunification services.

2. *Best Interests of Son*

The juvenile court also did not err in finding mother failed to establish son's interests were best served by the reinstatement of reunification services.

Son, then 20 months old, was living with the same foster parents who had been caring for him since his removal 14 months

11

earlier, and they wanted to adopt him.  DCFS reported son was "doing well in the home and his physical, developmental and emotional needs [were] being met by" his foster parents, who had "consistently demonstrated their commitment as active and loving parents" and took him to all recommended medical appointments.  Son "appeared to demonstrate a strong attachment with the caregivers, as evidenced by limited crying and clear comfort in being cared for by the couple."

In her section 388 petition, mother contended resuming reunification services was in son's best interests because she "cares for all of [son's] needs on visits such as feeding, changing his diaper, and communicating with him."  She also showed "motherly affection towards [son] by picking him up when he falls and asking the caregiver how he is doing."

Missing was any description of son's feelings toward mother or explanation of how reunification services would promote son's strong interest in stability at that point in the proceedings.  (*Anthony W.*, *supra*, 87 Cal.App.4th at pp. 251–52.) "[T]here is a rebuttable presumption that, in the absence of continuing reunification services, stability in an existing placement is in the best interest of the child, particularly when such placement is leading to adoption by the long-term caretakers."  (*In re Angel B.* (2002) 97 Cal.App.4th 454, 465 (*Angel B.*).)  "To rebut that presumption, a parent must make some factual showing that the best interests of the child would be served by modification."  (*Ibid.*)

It is undisputed that mother did not parent son for most of his life and had not visited him often.  Sister, not mother, cared for son during his early months of life.  Thereafter, son was placed with foster parents.  Mother had in-person visits with son

12

fewer than 10 times in 14 months, even though she had been approved for and agreed to twice weekly visits. She visited him in person only four times after she was incarcerated. A social worker reported, "[Mother's] lack of being involved in [son's] life has made it difficult for [me] to observe a motherly [*sic*] and child bond between the two of them." "When [son] does visit with his mother [I have] observed that he will go up to his current caregivers when he wants something as he [is] more familiar with them than his own mother." "On this record, no reasonable trier of fact could conclude that the bond, if any, [son] feels toward Mother (as opposed to the bond that *Mother* feels toward [son]) is that of a child for a parent." (See *Angel B.*, *supra,* 97 Cal.App.4th at p. 465, original italics.)

In summary, even construing the petition liberally, mother failed to show how it would be in son's best interest to revoke the order terminating reunification services. At the time of the hearing on the section 388 petition, mother had an unresolved criminal child abuse charge, had been diagnosed with a mental illness that made her a danger to others, and provided no details of treatment. Mother's petition said nothing about son having a bond with her, as she had visited him only occasionally. Son spent most of his life with the foster parents, who offered him stability and permanency through adoption. The juvenile court's summary denial of mother's petition was not arbitrary, capricious, or patently absurd.

### 3. *Sister's Interview*

Mother's other contention does not alter our conclusion. She argues the juvenile court erred in relying on statements made by sister during an interview with DCFS that was

documented in its section 388 response report. The month before the hearing, mother told the social worker she was homeless, but after she left the drug treatment program, she would reside with sister and expected to be hired by sister's roommate. Sister however, denied any plan for mother to live with her and reported her roommate neither owned a business nor trusted mother. Mother contends the juvenile court erred in considering this evidence because she was not seeking release of son, but only reinstatement of services, and she should have been allowed to cross-examine sister and the DCFS personnel who prepared the report. We disagree.

"[Q]uestions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection in the trial court on the ground sought to be urged on appeal." (*People v. Seijas* (2005) 36 Cal.4th 291, 301.) At the section 388 hearing, both DCFS's and son's counsel pointed to the discrepancy between mother's post-treatment plans and sister's refutation of those plans. The juvenile court gave mother's counsel the opportunity to respond to these arguments, but her counsel neither objected to the evidence nor expressed a need to cross-examine anyone—instead, counsel declined to argue further on the section 388 petition. Accordingly, mother forfeited her objections by failing to raise them below.

Further, any error in admitting sister's statements was harmless. (See *In re M.R.* (2020) 48 Cal.App.5th 412, 429 ["'In general, harmless error analysis applies in juvenile dependency proceedings'"]; *In re Basilio T.* (1992) 4 Cal.App.4th 155, 168 [although court erred in failing to reject evidence of child's comments to social worker, error was harmless because other evidence was presented to support court's finding].) As we have

14

discussed, the juvenile court did not need to consider sister's statements to determine that mother failed to make a prima facie showing of changed circumstances or that reinstating services was in son's best interests. She did not adequately show that she was treating her diagnosed mental illness. She did not show son was bonded to her, as opposed to the foster parents who had raised him and sought to adopt him. In light of the facts and procedural history of the case, the juvenile court did not abuse its discretion in summarily denying mother's section 388 petition.

## DISPOSITION

The juvenile court's order is affirmed.

MORI, J.

We concur:

COLLINS, Acting P. J.

ZUKIN, J.

15